**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SVETLANA BRAYNINA, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>      v.<br><br>THE TJX COMPANIES, INC.;<br><br>     Defendant. | **Case No.:**<br><br><br><br>**CLASS ACTION COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Svetlana Braynina ("Plaintiff"), by and through her undersigned attorneys, brings this class action on behalf of herself and all others similarly situated, based upon personal knowledge as to herself and her activities, and on information and belief as to all other matters against Defendant The TJX Companies, Inc. ("Defendant"), and alleges as follows:

**NATURE OF THE CASE**

1.     As explained in detail herein, Defendant has continually engaged in false, deceptive and misleading advertising and trade practices with respect to the promotion and sale of certain goods to New York consumers and the general public.

2.     During the Class Period, defined below, Defendant sold various products with price tags that prominently compared Defendant's price with a significantly higher comparative price from purportedly other retailers.  These "compare at" tags dupe

consumers into believing that, by purchasing the item at Defendant's store, they are receiving a significant discount on the actual price of the product.

3.      Defendant's comparison price tags described above are false, deceptive and misleading because, on information and belief, the comparative prices are not true, bona fide comparative prices.

4.      During the Class Period, Plaintiff and the proposed Class purchased products from Defendant that contained "Compare At" price tags.

5.      Based on Defendant's representations, Plaintiff and the proposed Class were misled into believing that they were receiving a significant discount on the actual cost of the products they purchased.

6.      Had Plaintiff and the Class been made aware that the comparative prices being advertised by Defendants were not true, bona fide prices, they would not have purchased the products, or would have paid less for them.

7.      As a result of Defendant's false and misleading statements, Plaintiff and the Class have suffered, and continue to suffer, injury in fact including the loss of money and/or property.

**JURISDICTION AND VENUE**

8.      This Court has diversity jurisdiction over the claims asserted herein.

9.      This Court also has original jurisdiction over all claims in this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). This is a putative class action whereby: (i) the proposed Rule 23 class consists of over 100 or more members; (ii) at least some of the members of the proposed class have a different citizenship from Defendant; and (iii) the claims of the proposed Rule 23 class exceed $5,000,000.00 in the aggregate.

10.     While the exact number of members in the proposed class is unknown at this time, Plaintiff has reason to believe that thousands of consumers purchased items at Defendant's stores throughout the state of New York during the Class Period.

11.     Diversity of citizenship exists between Plaintiff and Defendant.  Plaintiff is a citizen of New York and resides in Brooklyn, New York.  Defendant is organized under the laws of the state of Delaware and headquartered in Framingham, Massachusetts.

12.     While the exact damages to Plaintiff and the Class are unknown at this time, Plaintiff reasonably believes that her claims exceed five million dollars ($5,000,000) in the aggregate.

13.     This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself of the privilege of conducting business in the State of New York.

14.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

15.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

16.     Plaintiff Svetlana Braynina ("Plaintiff") is an individual residing in Brooklyn, New York.  On at least one occasion during the Class Period, Plaintiff purchased several items containing price tags with comparative prices at Defendant's stores located in New York.

17.     Defendant The TJX Company, Inc., ("TJX" or "Defendant") is incorporated in Delaware, with its principal executive offices located in Framingham, Massachusetts.

## FACTUAL ALLEGATIONS

18.     Defendant owns, operates, or otherwise controls several discount department store chains, doing business throughout the United States under the names T.J. Maxx, HomeGoods, and Marshalls.

19.     According to Defendant's most recent 10-K filing for fiscal year ending January 31, 2015, filed with the Securities and Exchange Commission ("10-K"), TJX operates its "business in four major divisions: Marmaxx and HomeGoods . . ., TJX Canada and TJX Europe."   *See* 10-K at 3.

20.     Marmaxx is comprised of T.J. Maxx and Marshalls, which "are collectively the largest off-price retailer in the United States . . ." *Id.*

21.     HomeGoods is described as "the leading off-price retailer of home fashions in the U.S." *Id.*

22.     According to the 10-K, New York state has the third highest number of stores for Defendant in the United States, containing 71 T.J. Maxx stores, 74 Marshalls stores, and 38 HomeGoods stores.

23.     Upon information and belief, many of Defendant's 183 locations in New York are located within this district.

24.     At each of its stores Defendant sells consumer goods, including clothing, shoes, home products and accessories.

25.     Defendant advertises its stores as the leading "off-price retailer," selling brand name and designer fashions below department and specialty store regular prices.

26.     Defendant promotes this idea by affixing to each product it sells a price tag containing the sale price of the item along with a "Compare At" price which is generally significantly higher than the actual sale price.

27.     The "Compare At" price is not explained in any way to the consumers shopping at its stores.

28.     Rather, consumers believe that the "Compare At" price is what they would have to pay in order to purchase the item at another retail location.

29.     The disparity between the sale price and the significantly higher "Compare At" price is intended to, and does, entice consumers to make a purchase by leading them to believe that they are saving the difference between the two prices.

30.     While that is the logical interpretation of the "Compare At" price, that is not how Defendant defines the term internally.

31.     At the extreme bottom of each of the T.J. MAXX, HOMEGOODS and MARSHALLS websites, in fine print, and surrounded by several other hyperlinks, Defendant has included a hyperlink entitled "compare at pricing."

32.     Upon information and belief, it is only through this hyperlink that it is disclosed to consumers what Defendant means by the use of "Compare At."

33.     Notably, each of the websites use the exact same explanation, stating:

What do we mean by "compare at?"

The "compare at" price is our buying staff's estimate of the regular, retail price at which a comparable item in finer catalogs, specialty or department stores may have been sold.  We buy products from thousands of vendors worldwide, so the items may not be offered by other retailers at the "compare at" price at any particular time or location.  We encourage you to do your own comparison shopping as another way to see what great value we offer.  We stand for bringing you and your family exceptional value <u>every day</u> – it's the foundation of our business.

*See*     http://tjmaxx.tjx.com/store/jump/topic/compare-at-pricing/2400020;
          http://www.marshallsonline.com/compareatpricing;
          http://www.homegoods.com/compareatpricing.

Each website last visited on July 25, 2015.

34.     Despite that definition on Defendant's websites, there is no indication on the price tags and other price advertising that, far from being the price that consumers would pay elsewhere, the "Compare At" price is simply Defendant's buying staff's "**estimate**" of what a "comparable" item "may have" sold for.

35.     Nor do Defendant's price tags or price advertising indicate in any way that, per the online definition, the "Compare At" price may have never been offered by another retailer at any time or location.

36.     Defendant's price tags and other price advertising also do not provide any warning that consumers should conduct their own comparison shopping before relying on Defendant's "Compare At" prices.

37.     Even if a consumer were savvy enough to access Defendant's websites and locate the "compare at pricing" link before purchasing an item, the "Compare At" definition found there would still not clarify what Defendant's "Compare At" price actually represents.

38.     The consumer would still have to guess whether the "Compare At" price represented: a) the regular, retail price of the specific item at a different store; b) the regular, retail price of a "comparable" item; c) an "estimate" of what a comparable item might sell for; or d) none of the above.

39.     Indeed, based on Defendant's amorphous definition of "compare at pricing," a "comparable" item may have never been offered for sale at the specific "Compare At" price by another retailer at any time.

40.     Further, there is no indication whether the comparison was made to the specific item Defendant is offering to the public or just a comparable item.

41.     Accordingly, Defendant's price tags and price advertising which contained "Compare At" prices are untrue, deceptive, and misleading advertising claims.

42.     Defendant's deceptive use of "Compare At" pricing falsely represents to consumers that the "Compare At" price was the price at which the product typically sold in the marketplace, from which Defendants offered a discount.

43.     There can be no reason, aside from deception, for Defendant to use the term "Compare At" on its sales tags and advertising, and then provide an amorphous definition for that term in an obscure section of its website without ever disclosing that definition to consumers.

44.     Defendant knew, or should have known, that the "Compare At" price contained on its price tags and sales advertising was false and misleading.

**PLAINTIFF'S PURCHASES**

45.     In or around October 2014, Plaintiff shopped at  one of Defendant's T.J. Maxx stores located at the Harriman Commons, at 290 Larkin Drive, Monroe, NY 10950.

46.     At that time, Plaintiff purchased several items of clothing, including hats, a vest, shirts, and various other children's clothing.  Each item she purchased contained a price tag with a "Compare At" price.

47.     On or around July 5, 2015, Plaintiff shopped at one of Defendant's combination Marshalls and HomeGoods stores located at 128 Bailey Farm Road, Monroe, NY 10950.

48.     At that time, Plaintiff purchased several products, including towels, room décor items, children's clothing, coffee mugs, dining plates, and a soap dispenser.  Each item she purchased contained a price tag with a "Compare At" price.

49.     For each of the purchases described above, the "Compare At" price tags led Plaintiff to believe that she was purchasing those items at a price significantly lower than the price at which those items were priced at other retailers.

50.     Plaintiff purchased each of the aforementioned items on the belief that the "Compare At" price accurately stated the value of each item.  Indeed, relying on the "Compare At" price listed on the tag, Plaintiff believed she was purchasing the items at a deep discount.

51.     Had Plaintiff been aware of the false and misleading nature of the "Compare At" price on the price tag, she would not have purchased those items from Defendant.

52.     Unfortunately, these were not isolated incidents.  Indeed, Plaintiff has shopped at each of Defendant's stores, T.J. Maxx, Marshalls, and HomeGoods, on multiple occasions during the proposed Class Period.  In each of these incidents, Plaintiff was led to believe that she was purchasing items at deep discounts, relying on Defendant's "Compare At" pricing.

## CLASS ACTION ALLEGATIONS

53.     Plaintiff brings this action as a class action pursuant to Rule 23(a) and Rule 23(b) of the Federal Rules of Civil Procedure.  In particular, Plaintiff brings this action on behalf of herself and all members of the following class (the "Class"):

> All individual consumers who reside in the State of New York who, within the Class Period, purchased one or more items from a TJ MAXX, HOMEGOODS or MARHALLS store with a price tag that contained a "Compare At" price and who have not received a refund or credit for their purchase(s).

54.     Plaintiff reserves the right to modify or amend the definition of the Class after having an opportunity to conduct further discovery.

55.     ***Numerosity. Rule 23(a)(1).***  The members of the Class are so numerous that their individual joinder is impracticable.  Plaintiff is informed and believes that the proposed Class contains at least thousands of purchasers of products from T.J. MAXX, HOMEGOODS or MARSHALLS who have been damaged by Defendant's conduct as alleged herein.

56.     ***Existence of Common Questions of Law and Fact. Rule 23(a)(2).***  This action involves common questions of law and fact, which include, but are not limited to, the following:

a.  Whether a reasonable consumer would interpret the phrase "Compare At" as Defendant interprets it;

b.  Whether the phrase "Compare At" is misleading and/or deceptive;

c.  Whether Defendant's conduct described herein constitutes unfair, deceptive, untrue or misleading advertising in violation of the New York General Business Laws;

d.  Whether Plaintiff and the other members of the Class are entitled to damages; and

e.  Whether Plaintiff and the Class are entitled to restitution, injunctive relief, or other equitable relief and/or other relief as may be proper.

57.  ***Typicality. Rule 23(a)(3).***  All members of the Class have been subject to and affected by the same conduct by Defendant.  The claims alleged herein are based on the same violations by Defendant that harmed Plaintiff and members of the Class.

58.  By purchasing items from Defendant during the applicable Class Period, all members of the Class were subjected to the same wrongful conduct.  Accordingly, Plaintiff's claims are typical of the Class's claims and do not conflict with the interests of any other members of the Class.

59.  Defendant's unlawful, unfair, deceptive, and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.

60.  ***Adequacy. Rule 23(a)(4).***  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests to those of the Class.

61.  ***Injunctive and Declaratory Relief.  Rule 23(b)(2).***  Defendant's actions regarding the deceptions and misrepresentations regarding the "Compare At" prices are uniform as to all members of the Class.  Defendant has acted on grounds that apply generally to the Class so that final injunctive relief as requested herein is appropriate respecting the Class as a whole.

62.     ***Predominance and Superiority of Class Action. Rule 23(b)(3).*** Questions of law or fact common to the Class predominate over any questions affecting only individual members and a class action is superior to other methods for the fast and efficient adjudication of this controversy, for at least the following reasons:

a.  Absent a class action, members of the Class as a practical matter will be unable to obtain redress, Defendant's violations of its legal duties will continue without remedy, additional consumers will be harmed, and Defendant will continue to retain its ill-gotten gains;

b.  It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions;

c.  When the liability of Defendant has been adjudicated, the Court will be able to determine the claims of all members of the Class;

d.  A class action will permit an orderly and expeditious administration of each Class member's claims and foster economies of time, effort, and expense;

e.  A class action regarding the issues in this case does not create any problems of manageability; and

f.  Defendant has acted on grounds generally applicable to the members of the Class, making class-wide monetary and equitable relief appropriate.

## CAUSES OF ACTION

### COUNT I
**Violation of New York General Business Law**

**(N.Y. GBL Law § 349)**

63.     Plaintiff realleges and incorporates the allegations contained in the paragraphs above, as if fully set forth herein.

64.     This cause of action is brought pursuant to New York General Business Law §349 ("GBL § 349"), which prohibits deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in New York State.

65.     The conduct of Defendant alleged herein violates GBL § 349 in that Defendant engaged in the unfair acts and deceptive practices as described herein, by representing comparative prices which were deceptive, false and misleading given that they were inflated, estimated, or fabricated to lead consumers to believe that they were receiving a discounted price.  Such conduct is inherently and materially deceptive and misleading in a material respect which was known, or by the exercise of reasonable care, should have been known, to be untrue, deceptive or misleading by Defendant.

66.     The materially misleading conduct of Defendant alleged herein was directed at Plaintiff and the Class and the public at large.

67.     Defendant's acts and practices described above are likely to mislead a reasonable consumer acting reasonably under the circumstances.

68.     Defendant has willfully and knowingly violated GBL §349 because, in order to increase its own profits, Defendant intentionally engaged in deceptive and false advertising.

69.     As a result of Defendant's deceptive and misleading acts, Plaintiff and the Class have been injured because they purchased items from Defendant without full disclosure of the material facts discussed above.

70.     The "Compare At" prices contained on the price tags of merchandise at T.J. MAXX, HOMEGOODS, and MARSHALLS played a substantial role in Plaintiff's decision to purchase the products she purchased from Defendant, and Plaintiff would not have purchased those items in the absence of Defendant's misrepresentations.

71.     As a result of Defendant's conduct in violation of GBL § 349, Plaintiff and the Class have been injured as alleged herein in amounts to be proven at trial.

72.     As a result of the Defendant's false or misleading advertising, Plaintiff and Class Members are entitled to monetary damages, injunctive relief, restitution and disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

**COUNT II**
**Violation of New York General Business Law**
**(N.Y. GBL Law § 350)**

73.     Plaintiff realleges and incorporates the allegations contained in the paragraphs above, as if fully set forth herein.

74.     This cause of action is brought pursuant to New York General Business Law §350 ("GBL § 350"), which prohibits false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

75.     The conduct of Defendant alleged herein violates GBL § 350 in that Defendant engaged in false advertising as described herein, by representing on its price tags and in its advertising comparative prices which were deceptive, false and misleading given that they were inflated, estimated, or fabricated to lead consumers to believe that the products were worth significantly more than they actually were, and that consumers were receiving a discounted price.

76.     Defendant's price tags and advertisements contain untrue and materially misleading statements concerning Defendant's products inasmuch as they misrepresent the true value of the products.

77.     The false and misleading advertising of Defendant alleged herein was directed at Plaintiff and the Class and the public at large.

78.     Defendant's "Compare At" pricing and advertising induced the Plaintiff and Class Members to buy Defendant's products.

79.     Plaintiff and the Class Members have been injured inasmuch as they relied upon the "Compare At" pricing on the price tags and advertising and purchased products that they would not have purchased, or paid a higher amount than they would have paid, in the absence of Defendant's conduct.

80.     Had Plaintiff and the Class known that Defendant's advertising and labeling with regard to "Compare At" pricing was false and misleading, they would not have purchased the products from Defendant.

81.     As a result of the Defendant's conduct alleged herein, Plaintiff and the Class are entitled to damages to be proven at trial.

<u>**COUNT IV**</u>
**Intentional Misrepresentation**

82.     Plaintiff realleges and incorporates the allegations contained in the paragraphs above, as if fully set forth herein.

83.     During the relevant period, Defendant intentionally made false representations that its products were worth the advertised "Compare At" pricing. As described herein, Defendant's representations were untrue insofar as, according to

Defendant's own websites, no other retailer actually offered the items at that compared price.

84.     Defendant made the representations herein with the intention of inducing the public, including Plaintiff and the Class, to purchase its products.

85.     Defendant intentionally made such misrepresentations by printing "Compare At" prices prominently and conspicuously on its product's price tag and in its advertising.

86.     Defendant knew that its "Compare At" pricing was false and misleading, but nevertheless made such representations through its advertising and product labeling. Defendant did so with the intention and belief that consumers would rely on Defendant's misrepresentations.

87.     Plaintiff and Class members, at the time the representations were made by Defendant, and at the time Defendant took the actions herein alleged, were ignorant of the falsity of the representations and believed them to be true.  In reliance on these representations, Plaintiff and the Class were induced to and did pay monies to purchase products from Defendant.

88.     Had Plaintiff and the Class known the truth about Defendant's "Compare At" pricing, they would not have purchased the product.

89.     As a proximate result of the fraudulent conduct of Defendant, Plaintiff and the Class paid monies to Defendant, to which Defendant is not entitled, and have been damaged in an amount to be proven at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and the members of Class, pray for:

A.      Declaring that this action is properly maintainable as a class action and certifying Plaintiff as Class representative and appointing her counsel as counsel for the Class;

B.      Permanently enjoining Defendant and their agents, employees, and all persons acting under, in concert with, or for them, from engaging in, and continuing to engage in the deceptive acts or practices alleged above;

C.      Awarding Plaintiff and each member of the Class actual and statutory damages to the maximum extent permitted by law;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a jury on all issues so triable.

DATED: July 27, 2015                    Respectfully submitted,

**THE MARLBOROUGH LAW FIRM, PC**

Christopher Marlborough (CM6107)
445 Broad Hollow Road, Suite 400
Melville, New York 11747
Telephone:  (212) 991-8960
Facsimile:  (212) 991-8952
Email: chris@marlboroughlawfirm.com


**CONNOLLY WELLS & GRAY, LLP**
Stephen E. Connolly
Gerald D. Wells, III
2200 Renaissance Blvd., Suite 308
King of Prussia, PA 19406

Telephone:  (610) 822-3700
Facsimile:  (610) 822-3800
Email: gwells@cwg-law.com
Email: rgray@cwg-law.com

Counsel for Plaintiff and the Proposed Class