**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SVETLANA BRAYNINA and INGA
GUREVICH, individually and on behalf
of all others similarly situated,

      Plaintiffs,

        v.

TJX COMPANIES, INC.;

       Defendant.

Case No.:  15-cv-05897

**FIRST AMENDED CLASS**
**ACTION COMPLAINT**

**JURY TRIAL**
**DEMANDED**

     Plaintiffs Svetlana Braynina and Inga Gurevich (collectively, "Plaintiffs"), by and through their undersigned attorneys, bring this class action on behalf of themselves and all others similarly situated, based upon personal knowledge as to themselves and their activities, and on information and belief as to all other matters against Defendant TJX Companies, Inc. ("Defendant"), and allege as follows:

**NATURE OF THE CASE**

     1.     As explained in detail herein, Defendant has continually engaged in false, deceptive and misleading advertising and trade practices with respect to the promotion and sale of certain goods to New York consumers and the general public.

     2.     During the Class Period, defined below, Defendant sold various products with price tags that prominently compared Defendant's price with a significantly higher "comparative price" from purportedly other retailers.  These "compare at" tags dupe

consumers into believing that, by purchasing the item at Defendant's store, they are receiving a significant discount on the actual price of the product.

3.      Defendant's comparison price tags described above are false, deceptive and misleading because, on information and belief, the comparative prices are not true, bona fide comparative prices.

4.      During the Class Period, Plaintiffs and the proposed Class purchased products from Defendant that contained "Compare At" price tags.

5.      Based on Defendant's representations, Plaintiffs and the proposed Class were misled into believing that they were receiving a significant discount on the actual cost of the products they purchased.

6.      A product's regular price, the price at which a product generally sells for in the marketplace, matters to consumers.  The price that a product generally sells for in the marketplace provides important information to consumers about the product's worth and the prestige that ownership of that product conveys.

7.      Had Plaintiffs and the Class been made aware that the comparative prices being advertised by Defendants were not true, bona fide prices, they would not have purchased the products, or would have paid less for them.

8.      As a result of Defendant's false and misleading statements, Plaintiffs and the Class have suffered, and continue to suffer, injury in fact including the loss of money and/or property.

**JURISDICTION AND VENUE**

9.      This Court has original jurisdiction over all claims in this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). This is a putative class action whereby:

(i) the proposed Rule 23 class consists of over 100 or more members; (ii) at least some of the members of the proposed class have a different citizenship from Defendant; and (iii) the claims of the proposed Rule 23 class exceed $5,000,000.00 in the aggregate.

10.     While the exact number of members in the proposed class is unknown at this time, Plaintiffs have reason to believe that thousands of consumers purchased items at Defendant's stores throughout the state of New York during the Class Period.

11.     Diversity of citizenship exists between Plaintiffs and Defendant.  Plaintiffs are citizens of New York and live within this district.  Defendant is organized under the laws of the state of Delaware and headquartered in Framingham, Massachusetts.

12.     While the exact damages to Plaintiffs and the Class are unknown at this time, Plaintiffs reasonably believe that their claims exceed five million dollars ($5,000,000) in the aggregate.

13.     This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself of the privilege of conducting business in the State of New York.

14.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

15.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

16.     Plaintiff Svetlana Braynina is an individual residing in Brooklyn, New York.  On at least one occasion during the Class Period, Plaintiff Braynina purchased

several items containing price tags with "Compare At" prices at Defendant's stores located in New York.  Plaintiff Braynina is a reasonable consumer.

17.     Plaintiff Inga Gurevich is an individual residing in Staten Island, New York. On one or more occasions during the Class Period, Plaintiff Gurevich purchased several items containing price tags with "Compare At" prices at Defendant's stores located in New York.  Plaintiff  Gurevich is a reasonable consumer.

18.     Defendant The TJX Company, Inc., ("TJX" or "Defendant") is incorporated in Delaware, with its principal executive offices located in Framingham, Massachusetts.

## FACTUAL ALLEGATIONS

19.     Defendant owns, operates, or otherwise controls several discount department store chains, doing business throughout the United States under the names T.J. Maxx, HomeGoods, and Marshalls.

20.     According to Defendant's most recent 10-K filing for fiscal year ending January 31, 2015, filed with the Securities and Exchange Commission ("10-K"), TJX operates its "business in four major divisions: Marmaxx and HomeGoods . . ., TJX Canada and TJX Europe."  *See* 10-K at 3.

21.     Marmaxx is comprised of T.J. Maxx and Marshalls, which "are collectively the largest off-price retailer in the United States . . ." *Id.*

22.     HomeGoods is described as "the leading off-price retailer of home fashions in the U.S." *Id.*

23.     According to the 10-K, New York state has the third highest number of stores for Defendant in the United States, containing 71 T.J. Maxx stores, 74 Marshalls stores, and 38 HomeGoods stores.

24.     Upon information and belief, many of Defendant's 183 locations in New York are located within this district.

25.     At each of its stores Defendant sells consumer goods, including clothing, shoes, home products and accessories.

26.     Defendant advertises its stores as the leading "off-price retailer," selling brand name and designer fashions below department and specialty store regular prices.

27.     Defendant promotes this idea by affixing to each product it sells in each of its stores a price tag containing the sale price of the item along with a "Compare At" price which is generally significantly higher than the actual sale price.

28.     Upon information and belief, the price tags used by Defendants in each of its stores in the United States are identical in all material respects.

29.     The "Compare At" price is not explained in any way on the price tag.

30.     Rather, when shopping for goods to purchase consumers are led to believe that the "Compare At" price is what they would have to pay in order to purchase the item at another retail location.

31.     The disparity between the sale price and the significantly higher "Compare At" price is intended to, and does, entice consumers to make a purchase by leading them to believe that they are saving the difference between the two prices.

32.     While that is the logical interpretation of the "Compare At" price, that is not how Defendant defines the term internally.

33.     At the extreme bottom of each of the T.J. MAXX, HOMEGOODS and MARSHALLS websites, in fine print, and surrounded by several other hyperlinks, Defendant has included a hyperlink entitled "compare at pricing."

- 5 -

34.     Upon information and belief, Defendant has posted signs in at least some of its stores in non-conspicuous places, which contain Defendant's description of "compare at pricing."

35.     Upon information and belief, it is only through this hyperlink and those strategically placed signs that Defendant discloses to consumers what it means by the use of "Compare At."

36.     Notably, the websites for each store use the exact same explanation, stating:

What do we mean by "compare at?"

The "compare at" price is our buying staff's estimate of the regular, retail price at which a comparable item in finer catalogs, specialty or department stores may have been sold.  We buy products from thousands of vendors worldwide, so the items may not be offered by other retailers at the "compare at" price at any particular time or location.  We encourage you to do your own comparison shopping as another way to see what great value we offer.  We stand for bringing you and your family exceptional value <u>every day</u> – it's the foundation of our business.

*See*     http://tjmaxx.tjx.com/store/jump/topic/compare-at-pricing/2400020;
http://www.marshallsonline.com/compareatpricing;
http://www.homegoods.com/compareatpricing.

Each website last visited on July 25, 2015.

37.     Upon information and belief, strategically placed signs in at least some of Defendant's stores contains the exact same explanation of "Compare At" as that found on the websites.

38.     Despite that definition on Defendant's websites and signage, there is no indication on the price tags and other price advertising that, far from being the price that consumers would pay elsewhere, the "Compare At" price is simply Defendant's buying staff's "**<u>estimate</u>**" of what a "comparable" item "may have" sold for.

39.     Nor do Defendant's price tags or price advertising indicate in any way that, per Defendant's internal definition, the "Compare At" price may have never been offered by another retailer at any time or location.

40.     Defendant's price tags and other price advertising also do not provide any warning that consumers should conduct their own comparison shopping before relying on Defendant's "Compare At" prices.

41.     As a result, reasonable consumers, including Plaintiffs, believe the "Compare At" reference price on Defendant's price tags to be the price at which other merchants supposedly sell the same product.

42.     Even if a consumer were savvy enough to access Defendant's websites and locate the "compare at pricing" link before purchasing an item, the "Compare At" definition found there would still not clarify what Defendant's "Compare At" price actually represents.  The same is true for the "compare at pricing" signs strategically placed in Defendant's stores.

43.     Whether viewing the website or the sign, the consumer would still have to guess whether the "Compare At" price represented: a) the regular, retail price of the specific item at a different store; b) the regular, retail price of a "comparable" item; c) an "estimate" of what a comparable item might sell for; or d) none of the above.

44.     Indeed, based on Defendant's amorphous definition of "compare at pricing," a "comparable" item may have never been offered for sale at the specific "Compare At" price by another retailer at any time.

45.     Further, there is no indication whether the comparison was made to the specific item Defendant is offering to the public or just a comparable item.

46.     Any reasonable consumer, such as the Plaintiffs, would believe that the "Compare At" price accurately represents the price which they would have to pay for the same product if they purchased it elsewhere.

**DEFENDANT'S DUTY TO SUBSTANTIATE "COMPARE AT" PRICES**

47.     The Federal Trade Commission ("FTC") requires that "[a]dvertisers must have evidence to back up their claims ("substantiation") . . ..  Before disseminating an ad, advertisers must have appropriate support for all express and implied objective claims that the ad conveys to reasonable consumers.  When an ad lends itself to more than one reasonable interpretation, there must be substantiation for each interpretation.  The type of evidence needed to substantiate a claim may depend on the product, the claims, and what experts in the relevant field believe is necessary."

48.     Upon information and belief, Defendants do not have sufficient evidence to substantiate the validity of their "Compare At" reference prices.

49.     The FTC specifically provides rules in the form of "Pricing Guides" for merchants such as Defendant who claim "to offer goods at prices lower than those being charged by others for the same merchandise in the advertiser's trade area," which provide as follows:

> Many members of the purchasing public believe that a manufacturer's list price, or suggested retail price, is the price at which an article is generally sold.  Therefore, if a reduction from this price is advertised, many people will believe that they are being offered a genuine bargain.  To the extent that list or suggested retail prices do not in fact correspond to prices at which a substantial number of sales of the article in question are made, the advertisement of a reduction may mislead the consumer.
>                              . . .
> [t]he widespread failure to observe manufacturer's suggested or list prices, and the advent of retail discounting

> on a wide scale have seriously undermined the dependability
> of list prices as indicators of the exact prices at which articles
> are in fact generally sold at retail. . . . Today, only in the rare
> case are all sales of an article at the manufacturer's suggested
> retail or list price.

16 C.F.R. § 233.3.

    50.    In its "Pricing Guidelines," the FTC goes on to say that an advertised

Manufacturer's Suggested Retail Price ("MSRP"):

> "[w]ill not be deemed fictitious if it is the price at
> which substantial (that is, not isolated or insignificant) sales
> are made in the advertiser's trade area (the area in which he
> does business". Conversely, if the list price is significantly
> in excess of the highest price at which substantial sales in the
> trade area are made, there is a clear and serious danger of the
> consumer being misled by an advertised reduction from this
> price. . . . [B]efore advertising a manufacturer's list price as
> a basis for comparison with his own lower price, the retailer
> should ascertain whether the list price is in fact the price
> regularly charged by principal outlets in his area."

*Id*.

    51.    Defendant, therefore, has a duty to verify that its "Compare At" prices are

prices at which substantial sales of their products are, and have been, made at other

principal retail outlets in New York.

    52.    Despite that duty, Defendant included "Compare At" prices on the price

tags of items sold in each of its stores without reasonable certainty that the "Compare At"

prices were not appreciably higher than the prices at which substantial sales of those

items were being made in New York.

    53.    Upon information and belief, Plaintiffs allege that Defendant has not

verified the prices other merchants charge for the identical products they sell, but have

instead simply made up the "Compare At" prices to deceive consumers into thinking they were receiving a better price at Defendant's stores than they would receive elsewhere

54.     Defendant's decision to use unverified reference prices was likely to, and did, deceive customers, including Plaintiffs.

55.     Accordingly, Defendant's price tags and price advertising which contained "Compare At" prices are untrue, deceptive, and misleading advertising claims.

56.     Defendant's deceptive use of "Compare At" pricing falsely represents to consumers that the "Compare At" price was the price at which the product typically sold in the marketplace, from which Defendant offered a discount.

57.     There can be no reason, aside from deception, for Defendant to use the term "Compare At" on its sales tags and advertising, and then provide an amorphous definition for that term in an obscure section of its website and on strategically placed signs in it stores, and without ever disclosing that definition to consumers.

58.     Reasonable consumers do not interpret Defendant's "Compare At" reference price to merely an "estimate" of what a "comparable" product "may" have sold for.

59.     As such, Defendant knew, or should have known, that the "Compare At" price contained on its price tags and sales advertising was false and misleading.

60.     Additionally, Defendant's disclosure of its definition of "Compare At" pricing does not comply with Federal Trade Commission ("FTC") guidelines concerning ".com Disclosures."

61.     The FTC requires that online advertising disclosures be made to consumers "clearly and prominently."

- 10 -

62.     Per the FTC, "[w]hen the disclosure of qualifying information is necessary to prevent an ad from being deceptive, the information should be presented clearly and conspicuously so that consumers can actually notice and understand it.  A . . . disclaimer that is easily missed on a website [is] not likely to be effective.  Nor can advertisers use fine print to contradict other statements in an ad or to clear up misimpressions that the add would leave otherwise …  To ensure that disclosures are effective, advertisers should use clear and unambiguous language, [a]nd place any qualifying information close to the claim being qualified."

63.     Defendant's "Compare At" reference prices require qualifying disclosures, yet they are not presented clearly or conspicuously in a way that consumers can notice them.

64.     Despite the FTC's requirement that [d]isclosures must be effectively communicated to consumers," Defendant has failed to do so.

65.     Rather, Defendant has placed its disclosures in fine print, and accessible only by hyperlink on the bottom of Defendant's websites, or on signs in Defendant's stores that are not easily seen or conspicuous to customers.

66.     Importantly, the disclosures, or any detail informing the customers what the "Compare At" pricing represents, are not to be found where customers would likely see them – on the price tag.

67.     As a result, Plaintiffs did not see, and were not aware of Defendant's disclosures.

68.     Indeed, at the point where a consumer makes a decision whether to purchase an item or not, they are simply presented with the 2 prices (the sale price, and the higher

"Compare At" reference price), left to guess what the "Compare At" price is, and are led to believe that they are actually saving the difference between the 2 prices

**PLAINTIFFS' PURCHASES**

69.     In or around October 2014, Plaintiff Braynina shopped at a T.J. Maxx store located at the Harriman Commons, at 290 Larkin Drive, Monroe, NY 10950.

70.     At that time, Plaintiff Braynina purchased several items of clothing, including hats, a vest, shirts, and various other items of children's clothing.  Each item she purchased contained a price tag which included a "Compare At" price that was higher than the price at which each product was being sold by Defendant.

71.     Plaintiff Braynina also shopped at, and made purchases at, the HomeGoods store located in Monroe, NY on or around June 21, 2015, and at the Marshalls store located in New Hyde Park, NY on or around July 8, 2015.

72.     On or around July 8, 2015, Plaintiff Braynina shopped at one of Defendant's combination Marshalls and HomeGoods stores located at 128 Bailey Farm Road, Monroe, NY 10950.

73.     At that time, Plaintiff purchased several products, including towels, room décor items, children's clothing, coffee mugs, dining plates, and a soap dispenser.  Each item she purchased contained a price tag which included a "Compare At" price that was higher than the price at which each product was being sold by Defendant.

74.     On or around October 16, 2015, Plaintiff Gurevich shopped at a T.J. Maxx store located at 2530 Hylan Boulevard, Staten Island, NY 10306.

75.     At that time, Plaintiff Gurevich purchased, among other things, several items of children's clothing.  Each item she purchased contained a price tag which included

a "Compare At" price that was higher than the price at which each product was being sold by Defendant.

76.     For each of the purchases by Plaintiffs described above, the "Compare At" price tags led Plaintiffs to believe that they were purchasing those items at prices significantly lower than the prices at which those items were priced at other retailers.

77.     Plaintiffs purchased each of the aforementioned items on the belief that the "Compare At" prices accurately stated the value of each item.  Indeed, relying on the "Compare At" price listed on the tag, Plaintiffs believed they were purchasing the items at a deep discount.

78.     At no time during any of their visits to Defendant's stores were Plaintiffs made aware of Defendant's definition or description of "Compare At" pricing.

79.     Had Plaintiffs been aware of the false and misleading nature of the "Compare At" price on the price tag, they would not have purchased all of those items from Defendant.

80.     Unfortunately, these were not isolated incidents.  Indeed, Plaintiffs have shopped at each of Defendant's stores, T.J. Maxx, Marshalls, and HomeGoods, on multiple occasions during the proposed Class Period.  In each of these incidents, Plaintiffs were led to believe that they were purchasing items at deep discounts, relying on Defendant's "Compare At" pricing.

## CLASS ACTION ALLEGATIONS

81.     Plaintiffs bring this action as a class action pursuant to Rule 23(a) and Rule 23(b) of the Federal Rules of Civil Procedure.  In particular, Plaintiffs bring this action on behalf of themselves and all members of the following class (the "Class"):

> All individual consumers who reside in the State of New York who, within the Class Period, purchased one or more items from a TJ MAXX, HOMEGOODS or MARHALLS store with a price tag that contained a "Compare At" price and who have not received a refund or credit for their purchase(s).

82.     Plaintiffs reserve the right to modify or amend the definition of the Class after having an opportunity to conduct further discovery.

83.     ***Numerosity. Rule 23(a)(1).***  The members of the Class are so numerous that their individual joinder is impracticable.   Plaintiffs are informed and believe that the proposed Class contains at least thousands of purchasers of products from T.J. MAXX, HOMEGOODS or MARSHALLS who have been damaged by Defendant's conduct as alleged herein.

84.     ***Existence of Common Questions of Law and Fact. Rule 23(a)(2).*** This action involves common questions of law and fact, which include, but are not limited to, the following:

   a.   Whether a reasonable consumer would interpret the phrase "Compare At" as Defendant interprets it;

   b.   Whether the phrase "Compare At" is misleading and/or deceptive;

   c.   Whether Defendant's conduct described herein constitutes unfair, deceptive, untrue or misleading advertising in violation of the New York General Business Laws;

   d.   Whether Plaintiffs and the other members of the Class are entitled to damages; and

   e.   Whether Plaintiffs and the Class are entitled to restitution, injunctive relief, or other equitable relief and/or other relief as may be proper.

- 14 -

85.     *Typicality. Rule 23(a)(3).* All members of the Class have been subject to and affected by the same conduct by Defendant.  The claims alleged herein are based on the same violations by Defendant that harmed Plaintiffs and members of the Class.

86.     By purchasing items from Defendant during the applicable Class Period, all members of the Class were subjected to the same wrongful conduct.  Accordingly, Plaintiffs' claims are typical of the claims of the Class and do not conflict with the interests of any other members of the Class.

87.     Defendant's unlawful, unfair, deceptive, and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.

88.     *Adequacy. Rule 23(a)(4).*  Plaintiffs will fairly and adequately protect the interests of the members of the Class.  Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously.  Plaintiffs have no adverse or antagonistic interests to those of the Class.

89.     *Injunctive and Declaratory Relief.  Rule 23(b)(2).*  Defendant's actions regarding the deceptions and misrepresentations regarding the "Compare At" prices are uniform as to all members of the Class.  Defendant has acted on grounds that apply generally to the Class so that final injunctive relief as requested herein is appropriate respecting the Class as a whole.

90.     *Predominance and Superiority of Class Action. Rule 23(b)(3).*  Questions of law or fact common to the Class predominate over any questions affecting only individual members and a class action is superior to other methods for the fast and efficient adjudication of this controversy, for at least the following reasons:

a. Absent a class action, members of the Class as a practical matter will be unable to obtain redress, Defendant's violations of its legal duties will continue without remedy, additional consumers will be harmed, and Defendant will continue to retain its ill-gotten gains;

b. It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions;

c. When the liability of Defendant has been adjudicated, the Court will be able to determine the claims of all members of the Class;

d. A class action will permit an orderly and expeditious administration of each Class member's claims and foster economies of time, effort, and expense;

e. A class action regarding the issues in this case does not create any problems of manageability; and

f. Defendant has acted on grounds generally applicable to the members of the Class, making class-wide monetary and equitable relief appropriate.

### CAUSES OF ACTION

### COUNT I
### Violation of New York General Business Law
### (N.Y. GBL Law § 349)

91.     Plaintiffs reallege and incorporate the allegations contained in the paragraphs above, as if fully set forth herein.

92.     This cause of action is brought pursuant to New York General Business Law §349 ("GBL § 349"), which prohibits deceptive acts or practices in the conduct of any

business, trade or commerce or in the furnishing of any service in New York State.

93.     The conduct of Defendant alleged herein violates GBL § 349 in that Defendant engaged in the unfair acts and deceptive practices as described herein, by representing comparative prices which were deceptive, false and misleading given that they were inflated, estimated, or fabricated to lead consumers to believe that they were receiving a discounted price.  Such conduct is inherently and materially deceptive and misleading in a material respect which was known, or by the exercise of reasonable care, should have been known, to be untrue, deceptive or misleading by Defendant.

94.     The materially misleading conduct of Defendant alleged herein was directed at Plaintiffs and the Class and the public at large.

95.     Defendant's acts and practices described above are likely to mislead a reasonable consumer acting reasonably under the circumstances.

96.     Defendant has willfully and knowingly violated GBL §349 because, in order to increase its own profits, Defendant intentionally engaged in deceptive and false advertising.

97.     As a result of Defendant's deceptive and misleading acts, Plaintiffs and the Class have been injured because they purchased items from Defendant without full disclosure of the material facts discussed above.

98.     The "Compare At" prices contained on the price tags of merchandise at T.J. MAXX, HOMEGOODS, and MARSHALLS played a substantial role in Plaintiffs' decision to purchase the products they purchased from Defendant, and Plaintiffs would not have purchased those items in the absence of Defendant's misrepresentations.

99.     As a result of Defendant's conduct in violation of GBL § 349, Plaintiffs and the Class have been injured as alleged herein in amounts to be proven at trial.

100.    As a result of the Defendant's false or misleading advertising, Plaintiffs and Class Members are entitled to monetary damages, injunctive relief, restitution and disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

**COUNT II**
**Violation of New York General Business Law**
**(N.Y. GBL Law § 350)**

101.    Plaintiffs reallege and incorporate the allegations contained in the paragraphs above, as if fully set forth herein.

102.    This cause of action is brought pursuant to New York General Business Law §350 ("GBL § 350"), which prohibits false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

103.    The conduct of Defendant alleged herein violates GBL § 350 in that Defendant engaged in false advertising as described herein, by representing on its price tags and in its advertising comparative prices which were deceptive, false and misleading given that they were inflated, estimated, or fabricated to lead consumers to believe that the products were worth significantly more than they actually were, and that consumers were receiving a discounted price.

104.    Defendant's price tags and advertisements contain untrue and materially misleading statements concerning Defendant's products inasmuch as they misrepresent the true value of the products.

105.    The false and misleading advertising of Defendant alleged herein was directed at Plaintiffs and the Class and the public at large.

106.    Defendant's "Compare At" pricing and advertising induced the Plaintiffs and Class Members to buy Defendant's products.

107.    Plaintiffs and the Class Members have been injured inasmuch as they relied upon the "Compare At" pricing on the price tags and advertising and purchased products that they would not have purchased, or paid a higher amount than they would have paid, in the absence of Defendant's conduct.

108.    Had Plaintiffs and the Class known that Defendant's advertising and labeling with regard to "Compare At" pricing was false and misleading, they would not have purchased the products from Defendant.

109.    As a result of the Defendant's conduct alleged herein, Plaintiffs and the Class are entitled to damages to be proven at trial.

### COUNT IV
**Intentional Misrepresentation**

110.    Plaintiffs reallege and incorporate the allegations contained in the paragraphs above, as if fully set forth herein.

111.    During the relevant period, Defendant intentionally made false representations that its products were worth the advertised "Compare At" pricing.  As described herein, Defendant's representations were untrue insofar as, according to Defendant's own websites, no other retailer actually offered the items at that compared price.

112.    Defendant made the representations herein with the intention of inducing the public, including Plaintiffs and the Class, to purchase its products.

113. Defendant intentionally made such misrepresentations by printing "Compare At" prices prominently and conspicuously on its product's price tag and in its advertising.

114. Defendant knew that its "Compare At" pricing was false and misleading, but nevertheless made such representations through its advertising and product labeling. Defendant did so with the intention and belief that consumers would rely on Defendant's misrepresentations.

115. Plaintiffs and Class members, at the time the representations were made by Defendant, and at the time Defendant took the actions herein alleged, were ignorant of the falsity of the representations and believed them to be true. In reliance on these representations, Plaintiffs and the Class were induced to and did pay monies to purchase products from Defendant.

116. Had Plaintiffs and the Class known the truth about Defendant's "Compare At" pricing, they would not have purchased the product.

117. As a proximate result of the fraudulent conduct of Defendant, Plaintiffs and the Class paid monies to Defendant, to which Defendant is not entitled, and have been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the members of Class, pray for:

A. Declaring that this action is properly maintainable as a class action and certifying Plaintiffs as Class representative and appointing their counsel as counsel for the Class;

B.      Permanently enjoining Defendant and their agents, employees, and all persons acting

under, in concert with, or for them, from engaging in, and continuing to engage in the deceptive

acts or practices alleged above;

C.      Awarding Plaintiffs and each member of the Class actual and statutory damages to

the maximum extent permitted by law;

D.      Awarding Plaintiffs the costs and disbursements of this action, including reasonable

attorneys' and experts' fees; and

E.      Granting such other and further equitable relief as this Court may deem just and

proper.

## JURY DEMAND

Plaintiffs hereby request a jury on all issues so triable.

DATED: November 5, 2015                Respectfully submitted,

**THE MARLBOROUGH LAW FIRM, PC**

_____
Christopher Marlborough (CM6107)
445 Broad Hollow Road, Suite 400
Melville, New York 11747
Telephone:  (212) 991-8960
Facsimile:  (212) 991-8952
Email: chris@marlboroughlawfirm.com


**CONNOLLY WELLS & GRAY, LLP**
Stephen E. Connolly
Gerald D. Wells, III
2200 Renaissance Blvd., Suite 308
King of Prussia, PA 19406
Telephone:  (610) 822-3700
Facsimile:  (610) 822-3800
Email: gwells@cwg-law.com

Email: rgray@cwg-law.com

Counsel for Plaintiffs and the Proposed Class