**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SVETLANA BRAYNINA and INGA GUREVICH, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| THE TJX COMPANIES, INC., | ) ) ) |
| Defendant. | ) ) |

Civil Action No. 1:15-cv-5897-KPF

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ....................................................................................................1

II.    PLAINTIFFS' ALLEGATIONS ...........................................................................3

III.   LEGAL STANDARDS ........................................................................................6

IV.  THE STATUTORY CLAIMS SHOULD BE DISMISSED UNDER RULE 12(B)(6) ......7

    A.    Plaintiffs Fail to Allege Any Cognizable Injury. ........................................................7

    B.    Plaintiffs Do Not Allege Any False or Misleading Statement...................................13

        1.    Plaintiffs Fail to Plead the Minimum Factual Allegations Necessary to Determine Whether Falsity or Deception Exist. .............................................13

        2.    Plaintiffs Likewise Fail to Plead Facts to Support the Materiality of Any Alleged Statement. ...................................................................................15

        3.    The FTC Recognizes the Validity of "Honest Estimate[s]" of Comparison Prices. ...................................................................................................15

        4.    There Is No Private Right of Action for General Claims of Inadequate Substantiation. ........................................................................................16

        5.    The "Compare At" Definition Cannot Be a Basis For Plaintiffs' Claims When They Say They Have Never Seen It.......................................................17

    C.    No Reasonable Consumer Could Have Been Misled by TJX's "Compare At" Prices...............................................................................................................18

V.    PLAINTIFFS' COMMON LAW CLAIM SHOULD BE DISMISSED UNDER RULE 12(B)(6) AND RULE 9(B)......................................................................24

VI.  CONCLUSION.................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Achtman v. Kirby, McInerney & Squire, LLP,*
464 F.3d 328 (2d Cir. 2006)........................................................................................6

*Ackerman v. The Coca-Cola Co.,*
No. 09–CV–0395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010) ...........................10

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)........................................................................................ passim

*Baron v. Pfizer, Inc.,*
42 A.D.3d 627 (N.Y. App. Div. 3d Dep't 2007) ......................................................9

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)........................................................................................ passim

*Derbaremdiker v. Applebee's Int'l, Inc.,*
No. 12–CV–01058, 2012 WL 4482057 (E.D.N.Y. Sept. 26, 2012)........................18

*Dimond v. Darden Rests., Inc.,*
No. 13 Civ. 5244, 2014 WL 3377105 (S.D.N.Y. July 9, 2014) .............8, 18, 19, 22

*Gomez-Jimenez v. N.Y. Law Sch.,*
103 A.D.3d 13 (N.Y. App. Div. 1st Dep't 2012)................................................7, 24

*Gomez-Jimenez v. N.Y. Law Sch.,*
943 N.Y.S.2d 834 (N.Y. Sup. Ct. N.Y. Cty. 2012)................................................12

*Hinojos v. Kohl's Corp.,*
718 F.3d 1098 (9th Cir. 2013) ................................................................................12

*Hughes v. Ester C Co.,*
930 F. Supp. 2d 439 (E.D.N.Y. 2013) ....................................................................17

*In re Borders Grp. Inc.,*
No. 11-10614, 2011 Bankr. LEXIS 2948 (Bankr. S.D.N.Y. July 21, 2011) ..........23

*In re John Surrey, Ltd.,*
67 F.T.C. 299, 1965 WL 92786 (FTC Mar. 16, 1965) ...........................................22

*Kearns v. Ford Motor Co.,*
567 F.3d 1120 (9th Cir. 2009) ................................................................................14

*Kim v. Carter's Inc.*,
    598 F.3d 362 (7th Cir. 2010) ........................................................................10

*Lamb v. Bitech, Inc.*,
    No. 3:11-cv-05583, 2013 WL 4013166 (N.D. Cal. Aug. 5, 2013) ..........................23

*Marcus v. AT&T Corp.*,
    138 F.3d 46 (2d Cir. 1998).........................................................................7, 24

*O'Donnell v. Bank of Am. Nat'l Ass'n*,
    504 F. App'x 566 (9th Cir. 2013) ..................................................................22

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    647 N.E.2d 741 (N.Y. 1995)................................................................. passim

*Quinn v. Walgreen Co.*,
    958 F. Supp. 2d 533 (S.D.N.Y. 2013).............................................................16

*Rubenstein v. The Neiman Marcus Grp. LLC*,
    No. 2:14-cv-07155 (C.D. Cal. May 12, 2015) ..............................................14, 15

*Scott v. Bell Atl. Corp.*,
    282 A.D.2d 180 (N.Y. App. Div. 1st Dep't 2001)......................................... passim

*Servedio v. State Farm Mut. Auto. Ins. Co.*,
    889 F. Supp. 2d 450 (E.D.N.Y. 2012) ..............................................................8

*Shaulis v. Nordstrom Inc.*,
    No. 15-cv-10326, 2015 WL 4886080 (D. Mass. Aug. 14, 2015), *appeal filed*, No.
    15-2354 (1st Cir.)........................................................................................9

*Silva v. Smucker Natural Foods, Inc.*,
    No. 14–CV–6154, 2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) ..........................10

*Small v. Lorillard Tobacco Co.*,
    720 N.E.2d 892 (N.Y. 1999).........................................................2, 8, 11, 12

*Sokoloff v. Town Sports Int'l Inc.*,
    6 A.D.3d 185 (N.Y. App. Div. 1st Dep't 2004).....................................................9

*Sperling v. DSW Inc.*,
    No. 5:15-cv-01366 (C.D. Cal. Nov. 19, 2015) ....................................................14

*Sperling v. Stein Mart, Inc.*,
    No. 5:15-cv-01411 (C.D. Cal. Jan. 26, 2016) ....................................................14

*Todd v. Retail Concepts, Inc.*,
    No. 3:07-0788, 2008 WL 3981593 (M.D. Tenn. Aug. 22, 2008)..........................23

*Tomasino v. Estee Lauder Cos.*,
    44 F. Supp. 3d 251 (E.D.N.Y. 2014) ....................................................................16

*Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*,
    221 F. Supp. 2d 410 (S.D.N.Y. 2002).................................................................16

*Woods v. Maytag Co.*,
    807 F. Supp. 2d 112 (E.D.N.Y. 2011) .............................................................7, 23

*Yeoman v. IKEA U.S. West, Inc.*,
    No. 11-cv-701, 2013 WL 5944245 (S.D. Cal. Nov. 5, 2013).................................23


## STATUTES

Cal. Bus. & Prof. Code § 17204 ...............................................................................12

Federal Trade Commission Act ..........................................................................17, 22

N.Y. Gen. Bus. Law § 218-a...................................................................................23

N.Y. Gen. Bus Law § 349 ............................................................................... passim

N.Y. Gen. Bus. Law § 350............................................................................... passim

N.Y. Gen. Bus. Law § 350-a.....................................................................................7

N.Y. Gen. Bus. Law § 350-e.................................................................................6, 17


## OTHER AUTHORITIES

16 C.F.R. § 233.2 ...............................................................................................1, 19, 20

16 C.F.R. § 233.3 ...............................................................................................16, 21

Fed. R. Civ. P. 8(a) ...............................................................................................14, 24

Fed. R. Civ. P. 9(b) ...............................................................................7, 14, 23, 24

Fed. R. Civ. P. 12(b)(6)...............................................................................6, 7, 23

Federal Trade Commission ".com Disclosures".......................................................22

Rules of the City of New York, 6 R.C.N.Y. 5-93 ....................................................22

Defendant The TJX Companies, Inc. ("TJX") submits this memorandum in support of its motion to dismiss Plaintiffs' Second Amended Class Action Complaint (the "SAC").

## I.     INTRODUCTION

The TJX Companies, Inc. is a leading off-price retailer of apparel and home fashions that operates the T.J. Maxx, Marshalls, and HomeGoods retail chains.  At its stores, TJX includes two prices on its price tags: TJX's selling price and a "Compare At" price.  SAC ¶ 55.  On signs posted conspicuously in each of its stores and on its websites, TJX explains what it means by "Compare At":

> The "compare at" price is our buying staff's estimate of the regular, retail price at which a comparable item in finer catalogs, specialty or department stores may have been sold.  We buy products from thousands of vendors worldwide, so the item may not be offered by other retailers at the "compare at" price at any particular time or location.  We encourage you to do your own comparison shopping as another way to see what great value we offer.  We stand for bringing you and your family exceptional value every day—it's the foundation of our business.

SAC ¶¶ 64, 67.

The Federal Trade Commission ("FTC") has long recognized that comparable value comparisons, precisely like the "Compare At" prices that TJX employs, are a permissible form of advertising.  *See* 16 C.F.R. § 233.2(c).  Nevertheless, despite the widespread use and acceptance of comparable value comparisons, and despite TJX's full disclosure of its "Compare At" definition, Plaintiffs have filed this putative class action alleging claims under New York's consumer protection law, N.Y. Gen. Bus Law § 349 ("Section 349"), and its false advertising law, N.Y. Gen. Bus Law § 350 ("Section 350"), along with a claim for common law misrepresentation.

The crux of Plaintiffs' complaint is that they were "dupe[d]" into purchasing products in TJX's stores because the differences between the "Compare At" prices and the selling prices

shown on the price tags reflected "savings" that were "inflated and/or illusory."  SAC ¶¶ 5, 8, 10.

Yet Plaintiffs do not allege that any particular product they bought bore a "Compare At" price

that was higher than what that product or a comparable product sold for at any other retailer.

Nor do they allege that any product they bought was available at any other retailer for a lower

price than TJX's selling price, nor that any product they bought was not worth what they paid for

it.  They nowhere even assert the "Compare At" prices by which they claim to have been misled.

These are the foundational facts on which Plaintiffs' claims logically ought to rest.  Their failure

to plead such facts is fatal to the complaint.

Most fundamentally, without these factual allegations, Plaintiffs cannot allege any

cognizable theory of injury.  The SAC's meager factual allegations do not show that Plaintiffs

paid more for the products they purchased than those products were worth, or more than they

would have paid for them absent the alleged deception.  *See* SAC ¶¶ 17, 20, 117, 136, 145.

Plaintiffs never allege either *what they should have paid*, or what the "Compare At" prices

*should have been* on the products that they purchased.  Plaintiffs also suggest at various points

that their injury consists of having been induced to buy products from TJX at all, *id.* ¶ 153, and

of expending time and resources in traveling to TJX stores, *id.* ¶¶ 14, 20, 144.  Neither theory

can succeed under established New York law.  *See Small v. Lorillard Tobacco Co.*, 720 N.E.2d

892, 898 (N.Y. 1999).

Plaintiffs' SAC also fails to establish the existence of any false advertisement by TJX.

By failing to allege any facts relating to the actual or the allegedly correct selling prices of the

items they purchased, or the "Compare At" prices of those items (by which they were supposedly

misled), Plaintiffs fail to plead that TJX made any false or misleading statements in connection

with its "Compare At" prices.  Without such facts, there is no basis for comparing the supposedly

"true" bargain to the advertised bargain, and thus no basis to infer that any "savings" was inaccurate.  Plaintiffs' bald assertion that every single item at every TJX store bears a "Compare At" price that is "inflated" or "illusory," SAC ¶ 5, is a mere "'label[] [or] conclusion[]' . . . devoid of 'further factual enhancement'" that cannot suffice to state a claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

Plaintiffs' attempt to avoid the consequences of these basic pleading failures by alleging in generalities that *all* of TJX's "Compare At" prices are misleading to reasonable consumers similarly fails.  According to Plaintiffs, "reasonable consumers" would believe that TJX's "Compare At" prices are specifically verified prices of identical products, not—as TJX tells consumers in each and every store—reasonable "estimates" of the regular selling prices of "comparable products."  *See* SAC ¶¶ 50, 62, 75, 78, 81, 90, 96-97.  This conclusory allegation cannot be the basis for Plaintiffs' claims.  To state a claim, Plaintiffs must allege *facts* that make plausible their claim that a reasonable consumer would interpret the phrase "Compare At" in the manner Plaintiffs purport to, which they cannot do when the meaning of "Compare At" is prominently disclosed in TJX stores and is consistent with the very FTC guidelines on which Plaintiffs rely in bringing their claims.

For these reasons, and as further explained below, the Court should grant TJX's motion and dismiss Plaintiffs' complaint with prejudice.

## II.   PLAINTIFFS' ALLEGATIONS

Plaintiffs allege, in only the most general of terms, that they bought items from TJX's stores and that the price tags for those items showed a selling price, which Plaintiffs paid, and a "Compare At" price, which was higher.  SAC ¶¶ 110, 115, 131.  Plaintiffs then allege, without explanation or detail and solely on information and belief, that the "Compare At" prices were "inflated" or "illusory," *id.* ¶¶ 5, 166, 176, and created a false impression of a greater bargain

than Plaintiffs were actually receiving, *id.* ¶¶ 8-12, 51.  According to Plaintiffs, it was the size of the bargain that purportedly caused them to make their purchases; had TJX posted the "true" "Compare At" prices, and had Plaintiffs known the "true" savings, they would not have bought these items or would have paid less for them, or may not even have patronized TJX's stores at all.  *Id.* ¶¶ 20, 141-45.

Nowhere, however, do Plaintiffs allege the "Compare At" prices they claim were shown on the price tags of the items they bought, or what they contend the "Compare At" prices for those items should have been.  Plaintiffs also, for the most part, make only general allegations about what products they actually purchased or what they paid for those items.[1]  Although each Plaintiff attaches checking or credit card statements to the SAC, these statements show only the total amounts they spent on purchases at TJX stores, with no indication of how many items they purchased, what any item cost, or what the allegedly misleading "Compare At" prices were.  *See* SAC Ex. A.   The closest Plaintiffs come to a concrete factual allegation is Plaintiff Gurevich's inclusion of a receipt for one alleged purchase, showing the selling prices of five items from T.J. Maxx.  SAC ¶ 132.  But she does not allege what she believes these items should have cost, or what their "Compare At" prices were or should have been.  Taken together, these allegations reveal neither the size of the bargains that allegedly induced Plaintiffs' purchases, nor the "true" bargains that purportedly should have been advertised.  In short, neither Plaintiff has provided any facts to plausibly establish that she was misled.

---

[1] Plaintiff Braynina alleges that she purchased "several items of clothing, including hats, a vest, shirts, and various other items of children's clothing" at a T.J. Maxx store in Monroe, NY, and that she purchased "several products . . . including towels, room décor items, children's clothing, coffee mugs, dining plates, and a soap dispenser" from unspecified TJX stores.  SAC ¶¶ 110, 115.  Plaintiff Gurevich alleges the total amounts she spent at various TJX stores on various dates, but does not say what she bought.  *Id.* ¶¶ 120-31.

Plaintiffs also generally accuse TJX of using misleading methods to "make[] up" "Compare At" prices—although they never identify the methods that TJX supposedly used. *Id.* ¶ 51; *see id.* ¶¶ 5, 10, 166, 176. Plaintiffs plead no sort of investigation into the "Compare At" prices associated with their purchases. They do not identify any other retailers who sold any of the products allegedly at issue in this case, what prices those retailers charged for those products, or whether those prices were greater or less than TJX's "Compare At" prices.[2]

Similarly, Plaintiffs allege in general terms that TJX's "Compare At" price tags would be misleading to reasonable consumers. *Id.* ¶¶ 75, 81, 96. Yet they fail to allege facts to make it plausible that a reasonable consumer could have been deceived, when Plaintiffs admit that TJX's "Compare At" definition is displayed both on signs in each of TJX's stores and on TJX's websites. *Id.* ¶¶ 64, 67. As a result, Plaintiffs resort to attacking the "Compare At" definition itself, arguing that no reasonable consumer would understand "Compare At" to mean what the disclosure says. *See id.* ¶¶ 76-81. Plaintiffs themselves, meanwhile, concede that they never read the disclosure before they made their purchases. *Id.* ¶¶ 105, 143.

Plaintiffs also allege that TJX furthered its purported scheme of using "inflated and/or illusory" "Compare At" prices, *id.* ¶ 5, by advertising the fact that TJX has high product turnover, thereby "encouraging . . . multiple trips to its stores." *Id.* ¶ 45; *see id.* ¶¶ 18, 46-54. Notably, Plaintiffs nowhere allege that this advertising was itself false—that is, they do not dispute that TJX's stores do, in fact, receive frequent shipments of new goods. Nor do they

---

[2] Plaintiffs' only purported support for their theory is a single clip from a television news program, and they do not allege that the program discussed any products that Plaintiffs themselves purchased. *See* SAC ¶ 108. And even in this single instance, Plaintiffs misrepresent the contents of the television clip. The clip shows that T.J. Maxx was selling a pack of Tommy Hilfiger undershirts for $19.99, with a "Compare At" price of $30.00—not, as Plaintiffs allege, that TJX was selling the shirts for $30.00. The clip then shows that Macy's website was offering the same product on "Sale" for a "Limited Time" at $19.99, with a "Regular" price of $45.00—in other words, the department store's normal price was *greater than* TJX's "Compare At" price. *See* http://abcnews.go.com/Business/tj-maxx-sured-compare-prices/story?id=32636566 (at 1:48).

allege that this turnover-related advertising was connected in any way to how TJX defines "Compare At" prices.

## III.   LEGAL STANDARDS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A complaint's factual content must "raise a right to relief above the speculative level," allowing the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678 (plaintiff must establish "more than *a sheer possibility* that a defendant has acted unlawfully" (emphasis added)). Conclusory allegations and legal conclusions masquerading as facts will not suffice to defeat a motion to dismiss. *Iqbal*, 556 U.S. at 678; *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006). Thus, a pleading must cross the "line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state," and Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law §§ 349, 350. Both statutes provide a private right of action for any person "who has been injured by reason of any violation of" these sections. *Id.* §§ 349(h), 350-e(3). In order to make out a claim under either statute, a private plaintiff must adequately allege that the defendant's conduct is "deceptive or misleading in a *material* way," and that "plaintiff has been injured by reason thereof." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995) (emphasis added); *see Scott v. Bell Atl. Corp.*, 282 A.D.2d 180, 183-84 (N.Y. App. Div. 1st Dep't 2001); N.Y. Gen.

Bus. Law § 350-a(1).[3]   Deceptive practices and false advertising are defined objectively, by asking whether the act or advertisement is "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Oswego Laborers*, 647 N.E.2d at 745; *Scott*, 282 A.D.2d at 184.  Whether a reasonable consumer would likely be misled may be determined as a matter of law.  *Oswego Laborers*, 647 N.E.2d at 745.

Common law misrepresentation likewise requires that the plaintiff plead a misrepresentation and injury resulting therefrom.  *See Gomez-Jimenez v. N.Y. Law Sch.*, 103 A.D.3d 13, 17-18 (N.Y. App. Div. 1st Dep't 2012).  However, that claim requires additional elements as well: a plaintiff must also plausibly allege that the defendant knew the statement was false when made, that it was made for the purpose of inducing reliance, and that the plaintiff justifiably relied on the statement.  *Id.* at 18.  A plaintiff cannot justifiably rely on a statement that would not have misled a reasonable consumer.  *See, e.g.*, *Marcus v. AT&T Corp.*, 138 F.3d 46, 63-64 (2d Cir. 1998).  Moreover, claims of fraud must be pled with particularity under Federal Rule of Civil Procedure 9(b).  *See Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 119 (E.D.N.Y. 2011).

## IV.    THE STATUTORY CLAIMS SHOULD BE DISMISSED UNDER RULE 12(B)(6)

### A.    Plaintiffs Fail to Allege Any Cognizable Injury.

In order to state a claim under either Section 349 or 350, Plaintiffs must allege facts showing—most basically—that they have suffered a cognizable injury.  N.Y. Gen. Bus. Law §§ 349(h), 350-e(3); *see Oswego Laborers*, 647 N.E.2d at 744-45.  Plaintiffs propose three different theories of injury in the SAC: (1) that they paid more for their purchases than they would have absent the alleged deception; (2) that they would not have made any purchases at all but for the

---

[3] Under Section 349, the plaintiff must also plead that the defendant is engaged in consumer-oriented conduct. *Oswego Laborers*, 647 N.E.2d at 744.  For the purposes of this motion, TJX does not dispute this element.

alleged deception; and (3) that they incurred collateral costs not directly related to their purchases from their shopping trips to TJX stores. *None* of these theories satisfies the injury element of either statute. Rather, they merely serve as an attempt to obscure the fact that Plaintiffs received the benefit of their bargains: that is, Plaintiffs received merchandise that was worth at least what they paid for it, and Plaintiffs allege nothing to the contrary.

Under settled New York law, it is not enough for a plaintiff to allege injury by claiming that she would not have bought an item but for the alleged deception. *Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892, 898 (N.Y. 1999).[4] To plead the requisite injury, a plaintiff must assert a harm independent of the claimed deception; otherwise the complaint merely "sets forth deception as both act and injury," and fails to assert any independent harm. *Id.* The plaintiff in a Section 349 or 350 case, therefore, must be able to plead that "[t]he deception is the false and misleading [advertisement], and the injury is the purchase price." *Dimond v. Darden Rests., Inc.*, No. 13 Civ. 5244, 2014 WL 3377105, at *9 (S.D.N.Y. July 9, 2014) (quoting *Edin v. Kangadis Food Inc.*, No. 13 Civ. 2311, 2013 WL 6504547, at *5 (S.D.N.Y. Dec. 11, 2013)). But there can be no "purchase price" injury if the plaintiff received the value of what she paid for. And Plaintiffs here make no factual attempt to challenge the intrinsic value of the products they purchased.

Indeed, "[t]he rationale of *Small* and its progeny is that deceived consumers may nevertheless receive—and retain the benefits of—something of value, even if it is not precisely what they believed they were buying." *Servedio v. State Farm Ins. Co.*, 889 F. Supp. 2d 450,

---

[4] In *Small*, five putative classes of plaintiffs alleged that the defendant tobacco companies had deceived them about the addictive properties of cigarettes. 720 N.E.2d at 894. The plaintiffs claimed that if they had known the truth about cigarettes they never would have bought any, and they sought reimbursement for the full purchase prices of the cigarettes they did buy. *Id.* at 895. The trial court certified the classes, but the Appellate Division de-certified, and the Court of Appeals affirmed the decertification. *Id.* at 897. The Court of Appeals then examined whether, without certification, the plaintiffs could proceed individually on their Section 349 claims. *Id.* at 897-98. It held they could not, because their only alleged injury—"that defendants' deception prevented them from making free and informed choices as consumers"—did not constitute actual harm under the statute. *Id.* at 898.

452 (E.D.N.Y. 2012) (citing cases); *see also Baron v. Pfizer, Inc.*, 42 A.D.3d 627, 629 (N.Y. App. Div. 3d Dep't 2007) ("Without further allegations that, for example, the price of the [drug] was inflated as a result of defendant's deception . . . plaintiff's claim 'sets forth deception as both act and injury' and, thus, 'contains no manifestation of either pecuniary or "actual" harm.'" (quoting *Small*, 720 N.E.2d at 898)); *Sokoloff v. Town Sports Int'l Inc.*, 6 A.D.3d 185, 186 (N.Y. App. Div. 1st Dep't 2004) (upholding dismissal of Section 349 claim where plaintiff did not "claim any kind of monetary loss other than payment of her membership fees [and] does not claim that defendant failed to deliver the services called for in the contract").

Plaintiffs here never allege that they received anything less than what they paid for—indeed, most of their allegations do not even specify the items they bought or what they paid for those items. They do not identify any qualities of the items they purchased that were substandard or that did not live up to what was advertised. They do not allege any facts to demonstrate that the actual purchase prices of these items were inflated—they concentrate exclusively on the (unspecified) difference between the purchase prices and the "Compare At" prices. Without these critical facts, it is impossible to draw a plausible inference that Plaintiffs have suffered any loss at all.

For these same reasons, a federal district court in Massachusetts recently dismissed a complaint that, like the SAC, alleged that the defendant had used inaccurate comparison prices, holding that the plaintiff had failed to plead any injury. *See Shaulis v. Nordstrom Inc.*, No. 15-cv-10326, 2015 WL 4886080, at *9 (D. Mass. Aug. 14, 2015), *appeal filed*, No. 15-2354 (1st Cir.) ("[I]t appears that [plaintiff] paid $49.97 for a sweater that is, in fact, worth $49.97. She still has the sweater in her possession. She does *not* allege that it is worth less than the selling price, that it was manufactured with shoddy materials or inferior workmanship, that it is of an

inferior design, or that it is otherwise defective. . . . [T]he fact that plaintiff may have been manipulated into purchasing the sweater because she believed she was getting a bargain does not necessarily mean she suffered economic harm: she arguably got exactly what she paid for, no more and no less.").[5]  The same result should obtain here.

Plaintiffs attempt to avoid the reality that they received the benefit of their bargains by alleging that they might have paid some unspecified, lesser amount for the products they purchased in the absence of the alleged deception.  *See* SAC ¶¶ 20, 145, 152.  These allegations fail, however, because they are wholly conclusory and thus must be disregarded for purposes of a motion to dismiss.  *Twombly*, 550 U.S. at 557.  Plaintiffs do not allege what they would have, or should have, paid "but for" TJX's alleged deception.  They do not identify any other retail outlets where the same or comparable items were available for less.  Nor do Plaintiffs allege that they paid a premium for any product they purchased on the mistaken belief that the product had some quality that it did not actually have.  *Compare, e.g.*, *Silva v. Smucker Natural Foods, Inc.*, No. 14–CV–6154, 2015 WL 5360022, at \*9, \*13 (E.D.N.Y. Sept. 14, 2015); *Ackerman v. The Coca-Cola Co.*, No. 09–CV–0395, 2010 WL 2925955, at \*23 (E.D.N.Y. July 21, 2010).  In the *Silva* and *Ackerman* cases, the plaintiffs plausibly alleged facts to show that they had paid extra for an item that turned out to be of lesser quality, and therefore was worth less, than what plaintiffs had paid and what the advertisements had led them to believe.  *See Silva*, 2015 WL 5360022, at \*1 (premium charged for product labeled "Natural" where it actually contained artificial ingredients); *Ackerman*, 2010 WL 2925955, at \*5-6 (premium charged for product labeled with health claims where it actually contained significant amounts of sugar).  In other words, those plaintiffs did not receive the benefit of their bargains.  Plaintiffs here allege no facts to support a

---

[5] *See also Kim v. Carter's Inc.*, 598 F.3d 362, 365-66 (7th Cir. 2010) (holding that consumers failed to allege injury where retailer sold them clothing that was advertised as discounted from suggested prices).

theory that their purchases were of a lesser quality than they expected, and therefore, consistent with *Small* and its progeny, their claims must fail.[6]

Next, Plaintiffs continue to plead that they would not have purchased any items at TJX stores at all if they had known the "truth" about "Compare At" prices.  SAC ¶ 153.  This theory is squarely foreclosed by *Small*—the alleged deception cannot be both the act and the injury. *Small*, 720 N.E.2d at 898.

Finally, Plaintiffs add a new theory of injury in the SAC: that they were purportedly harmed by expending time and resources in traveling to the TJX stores at which they allegedly shopped.  SAC ¶¶ 20-21, 82, 118, 137, 151.  But this theory also fails.  Most fundamentally, Plaintiffs' "gas money" theory is a transparent attempt to avoid the logic of *Small*.  If a plaintiff could adequately plead injury simply by identifying collateral costs, she could easily circumvent the requirement of pleading an injury separate from the alleged deception itself, because any consumer transaction almost certainly comes with some collateral costs.  All a plaintiff would have to do is allege a deception and then allege that she went to the defendant's place of business.  Indeed, Plaintiffs' theory would open the floodgates to litigation against retailers and businesses of all kinds by individuals who have suffered no actual harm.  On Plaintiffs' reasoning, a consumer need not even *make a purchase from the defendant* in order to be "injured" sufficiently to accrue a cause of action under Sections 349 and 350.

In this regard, California's consumer protection law provides an instructive comparison. Prior to 2004, California did not have an injury requirement in its consumer protection statute,

---

[6] Even as a general matter, aside from Plaintiffs' paucity of facts, the "Compare At" price tags would only have the potential to convey a false impression of premium characteristics *if* the "Compare At" prices were in fact inflated. But Plaintiffs do not allege any facts to support their bare conclusion that the prices were inflated (even though, if that were the case, such information would be available in the public domain).  *See infra* Section IV.B.  Without any factual support for a claim of inflated "Compare At" prices, any claim of injury due to a price premium is not plausibly alleged as *Twombly* requires.

and as a result, plaintiffs could bring suit without ever having used a defendant's products or services.  *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103-04 (9th Cir. 2013).  This changed with Proposition 64, which amended the statute to restrict standing to those who "ha[ve] suffered injury in fact and ha[ve] lost money or property as a result of the [alleged] unfair competition." Cal. Bus. & Prof. Code § 17204.  The purpose of this amendment was specifically to restrict standing to those who actually had business dealings with a defendant.  *Hinojos*, 718 F.3d at 1104 (citing *Clayworth v. Pfizer, Inc.*, 233 P.3d 1066, 1086-87 (Cal. 2010)).  California courts subsequently took a broad view of this standing requirement, holding that a plaintiff could adequately allege injury simply by alleging that she would not have bought a product but for the deception.  *Id.* (citing *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 890 (Cal. 2011)).  This, of course, is precisely the position rejected by the Court of Appeals in *Small*, which established a more rigorous standard to plead injury under Sections 349 and 350.  *Small*, 720 N.E.2d at 898. In short, then, what Plaintiffs seek to do with their "gas money" argument is to press a theory of injury so broad that it would not even be permitted under California's post-2004 regime—a regime that is much *more* permissive than New York's.

Moreover, collateral harms cannot suffice to demonstrate actual injury because such harms are not a result that flows from the theory of liability.  *See, e.g.*, *Gomez-Jimenez v. N.Y. Law Sch.*, 943 N.Y.S.2d 834, 847 (N.Y. Sup. Ct. N.Y. Cty. 2012), *aff'd*, 103 A.D.3d 13 (disregarding plaintiffs' allegations about the collateral costs of their allegedly overpriced law degrees, "such as interest on loans, books, traveling and housing expenses," because plaintiffs' "sole objection" to the degrees' cost was "purely in employment terms").  Here, Plaintiffs' "gas money" allegations have no causal connection to their claim that TJX's "Compare At" prices were not verified, actual prices for identical items.  In fact, their allegations do not even make

clear that Plaintiffs traveled to TJX stores as a result of any alleged *misleading* advertising. Plaintiffs allege that they traveled to TJX stores in part because of advertising promoting TJX's frequent shipments of new merchandise, *see* SAC ¶¶ 18, 45-52, but nowhere do Plaintiffs allege that this advertising was itself false or misleading.  Further, to the extent Plaintiffs allege that they were lured to TJX stores by advertisements promising good prices, *see* SAC ¶¶ 4, 7, 38-44, they likewise never plead any facts to suggest that the prices they actually paid for the items they bought were not good prices.  There is simply no plausible allegation that TJX could have caused Plaintiffs' supposed "gas money" injuries by failing to verify their "Compare At" prices.

       **B.**       **Plaintiffs Do Not Allege Any False or Misleading Statement.**

A violation of Section 349 requires an alleged act to be "deceptive," and a violation of Section 350 requires an alleged advertisement to be "false."  In both cases, the deception or falsity cannot be abstract—it must be material.  *Oswego Laborers*, 647 N.E.2d at 744; *Scott*, 282 A.D.2d at 184.  But Plaintiffs have failed to plead facts sufficient to plausibly support this element of their claims.

       1.       <u>Plaintiffs Fail to Plead the Minimum Factual Allegations Necessary to Determine Whether Falsity or Deception Exist.</u>

Here, the supposedly false or misleading statements were the "Compare At" prices listed on TJX's price tags, because those tags allegedly overstated the savings that a customer received. Yet, as described above, Plaintiffs fail entirely to allege a single TJX "Compare At" price, let alone what those "Compare At" prices supposedly should have been.  At a minimum, in order to plead that the statements on the price tags were false, Plaintiffs would have to identify, for the items they allegedly purchased, the "Compare At" price and the selling price (so that the Court can determine the advertised bargain), along with facts from which it can be reasonably inferred that the "Compare At" price should have been different (so that the Court can determine the

alleged "true" bargain).  Only by comparing the supposedly "true" bargain to the advertised bargain could the Court determine whether Plaintiffs have plausibly alleged that TJX made a false or misleading statement.

Absent these very basic, foundational facts, Plaintiffs fail to plead an essential element of their claims.  Indeed, three courts analyzing claims very similar to Plaintiffs' under California's consumer protection laws have so found.  *See* Order Granting Mot. Dismiss 2d Amend. Compl. at 12, *Sperling v. Stein Mart, Inc.*, No. 5:15-cv-01411 (C.D. Cal. Jan. 26, 2016) (plaintiff's allegations were "conclusory and implausible"); Order Granting Defs.' Mot. Dismiss Pltf.'s 1st Amend. Compl. at 11, *Sperling v. DSW Inc.*, No. 5:15-cv-01366 (C.D. Cal. Nov. 19, 2015) ("The [complaint] repeatedly alleges in conclusory fashion that Defendants' comparative reference prices do not represent the prevailing market prices for Defendants' products. . . . Nowhere, however, does the [complaint] explain how Defendants' comparative reference prices are inflated or why they do not accurately reflect prevailing market prices."); Order Granting Defs.' Mot. Dismiss Pltf.'s 2d Amend. Compl. at 9-10, *id.* (C.D. Cal. Jan. 28, 2016) (dismissing subsequent amended complaint for same reason); Order Granting Def.'s Mot. Dismiss Pltf.'s 2d Amend. Compl. at 7-8, *Rubenstein v. The Neiman Marcus Grp. LLC*, No. 2:14-cv-07155 (C.D. Cal. May 12, 2015) ("Plaintiff never alleges that merchandise of like grade and quality was not in fact offered by other merchants at the 'Compared to' price. . . . Thus, Plaintiff has still failed to identify any specific statements that were in fact false or misleading.").[7]

---

[7] Although California law applies Rule 9(b)'s heightened pleading standard to claims under its consumer protection statutes, *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1122 (9th Cir. 2009), the same principles recognized in the *Stein Mart*, *DSW*, and *Neiman Marcus* cases are applicable to the plausibility inquiry under Rule 8(a).  Plaintiffs' pleading failure here is not one of mere specificity—it is that Plaintiffs do not allege *any* facts to support a reasonable inference of falsity.  At best, they plead only "a sheer possibility" of falsity, the determination of which is dependent on unpled facts.  A "sheer possibility" is not sufficient to sustain a complaint.  *Iqbal*, 556 U.S. at 678.

Plaintiffs simply cannot state a cognizable claim as to all "Compare At" prices in the abstract, completely untethered from any factual allegations, when, by their own admission, TJX sells tens of thousands of products at a high rate of turnover.  SAC ¶¶ 47-49.  Plaintiffs do not, and cannot, plead facts to support such a wide-ranging theory.  In fact, they offer *no* factual support for their conclusory assertion that every single item at every TJX store bears a "Compare At" price that is "inflated," "illusory," or otherwise inaccurate.  *Id.* ¶ 5; *see Iqbal*, 556 U.S. at 678 (mere "labels and conclusions" and "'naked assertions' devoid of 'further factual enhancement'" are insufficient to state a claim (quoting *Twombly*, 550 U.S. at 555, 557)).

> 2. <u>Plaintiffs Likewise Fail to Plead Facts to Support the Materiality of Any Alleged Statement.</u>

The same pleading failures detailed above also defeat any claim that the allegedly deceptive "Compare At" prices were material to Plaintiffs' purchasing decisions.  *See Oswego Laborers*, 647 N.E.2d at 744 (prima facie case under Section 349 requires plaintiff to plead that a defendant's allegedly deceptive practice "is deceptive or misleading in a material way"); *Scott*, 282 A.D.2d at 184 (same for Section 350).   Plaintiffs would have to, at minimum, plead what the "Compare At" prices for the items they purchased *should have been*, because only then could the Court determine whether it is plausible that any statement, even if allegedly false, was material.  For instance, if the "Compare At" price shown on a TJX price tag was $30, but the same item was sold elsewhere for $29, that allegedly fraudulent variance would be immaterial in any event, because it could not have created an impression of a much greater bargain than the "true" bargain.

> 3. <u>The FTC Recognizes the Validity of "Honest Estimate[s]" of Comparison Prices.</u>

Because Plaintiffs provide no facts regarding the "Compare At" prices they supposedly saw themselves, they instead rely solely on the allegation that TJX's "Compare At" prices must

have been false because they were "estimates"—which, as explained *infra* Section IV.C, runs counter to the very FTC guidance on which Plaintiffs rely in the SAC.  It also runs counter to common sense: a national retailer with a deep and broad inventory could never have comparison prices that are anything *other* than estimates, because prices for comparable or even identical items are not uniform among other retailers, and even with respect to any one particular retailer, these prices are constantly changing and might vary by geography or other factors.  Indeed, the FTC has so recognized.  *See* 16 C.F.R. § 233.3(g) ("[A] manufacturer or other distributor who does business on a large regional or national scale cannot be required to police or investigate in detail the prevailing prices of his articles throughout so large a trade area.  If he advertises or disseminates a list or preticketed price *in good faith* (i.e., as *an honest estimate of the actual retail price*) which does not appreciably exceed the highest price at which substantial sales are made in his trade area, he will not be chargeable with having engaged in a deceptive practice." (emphasis added)).  The mere fact that TJX's comparison prices were estimates thus does not support a plausible inference of falsity.

4.      There Is No Private Right of Action for General Claims of Inadequate Substantiation.

To the extent Plaintiffs allege that TJX's "Compare At" prices were false or misleading because they were not substantiated, *see* SAC ¶¶ 53, 89-90, such a claim is simply not actionable under Sections 349 and 350.  *See, e.g.*, *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 258 n.4 (E.D.N.Y. 2014) (under those statutes, plaintiff could not have advanced "a non-actionable 'lack of substantiation' claim premised on the allegation that [defendant]'s advertising is deceptive because its statements are not substantiated"); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) (same); *cf. Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410, 424 & n.2 (S.D.N.Y. 2002) (holding that plaintiff could not maintain Lanham

16

Act false advertising claim based on lack of substantiation, and stating in footnote that analysis under Section 349 would have been the same, "although . . . [Section 349's] applicability to all comparative advertising claims is debatable").  This is for good reason—otherwise, a plaintiff could use Sections 349 and 350 to "bootstrap" a claim that actually alleges a violation of the FTC Act, which lacks a private right of action.  *See Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 456-57 (E.D.N.Y. 2013) (discussing and adopting the use of this principle under California consumer protection law).  That leaves Sections 349 and 350 to cover only claims where there has been an actual and material *deception or falsity*.  Absent a claim of falsity, which is factually unsupported by the SAC, one is left with nothing more than an unavailable claim of inadequate substantiation.

5.      The "Compare At" Definition Cannot Be a Basis for Plaintiffs' Claims
When They Say They Have Never Seen It.

Finally, Plaintiffs suggest that they can maintain their claims completely divorced from any underlying facts because TJX's "Compare At" definition was itself *per se* misleading.  SAC ¶¶ 76-80.  But that theory is not viable, at least not for Plaintiffs, because they do not claim to have seen TJX's "Compare At" definition before they made any of their alleged purchases (notwithstanding that the definition is displayed in each of TJX's stores and on its websites).  To the contrary, Plaintiffs specifically allege that they did *not* see the disclosures.  *See* SAC ¶¶ 105, 143.  Thus, Plaintiffs could not have been injured "by reason of" the definition itself, as required by both statutes.  N.Y. Gen. Bus. Law §§ 349(h); 350-e(3).  More simply put, Plaintiffs cannot have been injured by a statement that they claim not to have seen.  Thus, without alleging the actual "Compare At" prices—*the numbers*—on which they purportedly relied in making their purchases, Plaintiffs fail to identify any false statement that could form the basis for their claims.

17

**C.      No Reasonable Consumer Could Have Been Misled by TJX's "Compare At" Prices**

To the extent that Plaintiffs' claim is that TJX's "Compare At" prices were *per se* misleading because they were not what Plaintiffs reasonably believed them to be, that theory fails too.  Sections 349 and 350 require that the allegedly misleading statement or practice be one that is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers*, 647 N.E.2d at 745; *Scott*, 282 A.D.2d at 184.  Most charitably construed, the SAC alleges that TJX's "Compare At" prices were misleading because a reasonable consumer would not have understood that these prices were an *estimate* of prevailing market prices for *comparable* (not identical) goods.  *See* SAC ¶¶ 10, 54, 75, 81, 96.  But no reasonable consumer could have been misled about this, for the simple reason that—as Plaintiffs concede—TJX's "Compare At" definition was posted on signs in its stores and on its websites, and those disclosures stated that the "Compare At" price was TJX's "buying staff's estimate of the regular, retail price at which a comparable item in finer catalogs, specialty or department stores may have been sold." *Id.* ¶¶ 64, 67.  Plaintiffs also acknowledge that TJX's websites additionally notify consumers that its selling prices are compared to "comparable merchandise." *Id.* ¶¶ 42-43.  Indeed, TJX's publication of its "Compare At" policy takes what might in some cases be an issue of fact—what a reasonable consumer would believe absent a clearly stated explanation—and transforms it into an issue ripe for disposition on a motion to dismiss.  As this Court has held, a plaintiff cannot state a claim that a reasonable consumer could have been misled "[w]here a defendant fully disclosed the terms and conditions of an alleged deceptive transaction." *Dimond*, 2014 WL 3377105, at *7 (quoting *Derbaremdiker v. Applebee's Int'l, Inc.*, No. 12–CV–01058, 2012 WL 4482057, at *4 (E.D.N.Y. Sept. 26, 2012)).

18

*Dimond* is precisely on point.  In that case, the plaintiff alleged that a restaurant acted deceptively under Section 349 when it charged an automatic 18% gratuity, where the gratuity policy was stated on the menu.  2014 WL 3377105, at *1-2.  The plaintiff claimed that the conduct was misleading because a reasonable consumer would not understand an "automatic" gratuity to be a gratuity (*i.e.*, a "voluntary act") at all.  *Id.* at *7.  This Court rejected that argument, finding that a reasonable consumer could not have been misled where the terms of the transaction were "completely and conspicuously indicated" and where "Plaintiff, as well as any other customer, had the option of leaving the restaurant upon seeing this disclosure."  *Id.* at *8. Here, as Plaintiffs admit, the "Compare At" policy is posted in TJX's stores, and any patron who does not want to make a purchase after reading the policy is free to leave without buying anything, or to return any goods they have already purchased.

Implicit in *Dimond* is also the principle that, even if a plaintiff disagrees with the precise terminology the defendant used in a disclosure (*i.e.*, whether a "gratuity" can ever be mandatory), that does not render the disclosure misleading when its import is clear.  The same is true of Plaintiffs' hollow argument that the words "estimate" and "comparable" in TJX's disclosure somehow render the "Compare At" definition misleading.  *See* SAC ¶¶ 76-80.  TJX's disclosure is written in clear laymen's terms, and a reasonable consumer would understand that an "estimate of the regular, retail price [of] a comparable item" means just what it says.

Moreover, even putting disclosure aside, the assumptions underlying Plaintiffs' theory that a reasonable consumer could have been misled are faulty on separate and unique grounds, and for multiple reasons.  *First*, Plaintiffs assume that a reasonable consumer would believe that "Compare At" prices imply a comparison to the "same" or "identical" item.  *Id.* ¶¶ 50, 75, 81. This precise assumption, however, has been rejected by the very FTC guidelines on which

Plaintiffs rely.  *See id.* ¶¶ 91-94.  These guidelines expressly permit a retailer to advertise price comparisons not only for identical items, but also "for *other merchandise of like grade and quality—in other words, comparable or competing merchandise.*"  16 C.F.R. § 233.2(c) (emphasis added).  The guidelines offer "Comparable Value $15.00" as an example of an advertisement that indicates a comparable value comparison.  *Id.*  "Comparable Value $15.00" is, of course, substantively indistinguishable from TJX's "Compare At."  Simply put, price comparisons are not limited to prices of the *same* item.

Plaintiffs' allegation that TJX uses "Compare At" prices for in-house brands or exclusive merchandise is of no moment.  *See* SAC ¶ 83-85.  Even if a particular item is not itself for sale elsewhere, TJX may still make a comparison to a *comparable* item available in the marketplace, provided that the comparison is to an item of "like grade and quality."  16 C.F.R. § 233.2(c).  Plaintiffs offer no allegations that any "Compare At" price failed to reflect a comparison to an item of similar quality.

*Second*, Plaintiffs wrongly assume that a reasonable consumer would not understand "Compare At" prices to be "estimates."  SAC ¶¶ 10, 54, 96.  Yet the FTC guidelines recognize that comparable value comparisons may reflect good faith estimates.  To comply with the guidelines, a retailer need only "be *reasonably certain* that the higher price he advertises does not *appreciably exceed* the price at which substantial sales of the article are being made in the area."  16 C.F.R. §233.2(a)  (emphasis added)  (establishing this standard for same-item comparisons); *id.* § 233.2(c) (adopting same standard for comparable value comparisons). The FTC defines "substantial" to mean "not isolated or insignificant."  *Id.* § 233.3(d).  The guidelines do not require specific thresholds or sales volumes; nor do they require a retailer to identify a specific price at a specific other retailer in order to offer a comparable value comparison.  The

guidelines even explicitly recognize that a national retailer like TJX "cannot be required to police or investigate in detail the prevailing prices of his articles throughout [a national] trade area," and thus a national retailer must be permitted to use comparison prices that reflect an "*honest estimate*" of market prices. *Id.* § 233.3(g) (emphasis added). Plaintiffs allege no facts to suggest that any "Compare At" price is *not* exactly what the FTC says it should be: a reasonable, good faith estimate that does not appreciably exceed the price at which substantial sales of the same or similar items are being made in the national trade area.

These principles embodied in the FTC's guidelines make eminent sense. For example, suppose a competitor of TJX, Retailer A, regularly offers Item X for $100. Another competitor, Retailer B, regularly offers Item X for $90. Retailers A and B each comprise approximately half of the national market for sales of Item X at full-price retail outlets. If TJX sets its "Compare At" price for Item X (or for an item of like grade and quality, Item Y) at $95, then the "Compare At" price reflects a reasonable, good faith estimate of Item X's market price, in compliance with the FTC's guidelines. Yet under Plaintiffs' theory, this "Compare At" price would be misleading because it does not represent the actual price charged for Item X by either Retailer A or B. *See* SAC ¶ 78. A reasonable consumer would not reach this conclusion, and this result is not mandated by Sections 349 and 350.

Plaintiffs attempt to argue that TJX could not have been making reasonable, good faith estimates because, essentially, its inventory is too large. *See* SAC ¶¶ 50-53. Besides being a non-cognizable substantiation claim, *see supra*, Plaintiffs' argument also contradicts the FTC's clear recognition that national retailers can, and do, use "honest estimate[s]" to set comparison prices for national chains. 16 C.F.R. § 233.3(g). Plaintiffs do not offer any facts to support their "too big to estimate" argument.

Finally, even if TJX's "Compare At" definition varied from the FTC's guidance, or from the Rules of the City of New York, *see* SAC ¶¶ 86-88, that variance would not, absent more, give rise to a viable claim.  As with their lack-of-substantiation argument, Plaintiffs cannot use Section 349 to "bootstrap" claims under statutes or regulations that have no private right of action.  As this Court has held, mere allegations that a defendant violated the Rules of the City of New York cannot constitute a claim for relief under Section 349, because "a plaintiff cannot circumvent the lack of a private right of action for violation of a [state or local] law by pleading his claim under GBL § 349."  *Dimond*, 2014 WL 3377105, at *6 (quoting *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199 (2d Cir. 2005)).  The same principle applies to the FTC guidelines. *See O'Donnell v. Bank of Am., Nat'l Ass'n*, 504 F. App'x 566, 568 (9th Cir. 2013) ("The [FTC Act] doesn't create a private right of action, and plaintiffs can't use California law to engineer one." (citation omitted)).  Additionally, the FTC guidelines are not even binding themselves: they merely offer retailers a set of suggestions that, if followed under normal circumstances, would result in truthful and non-misleading advertising.  *See In re John Surrey, Ltd.*, 67 F.T.C. 299, 1965 WL 92786, at *24 (FTC Mar. 16, 1965).

To the extent Plaintiffs allege that TJX's "Compare At" prices would mislead a reasonable consumer because TJX's disclosures were somehow inadequate, *see* SAC ¶¶ 66-71, 98-106, that position likewise finds no support.  For one, the FTC guidance document on which Plaintiffs purport to rely for this position, *see* SAC ¶ 98, simply does not apply here.  That guidance is titled ".com Disclosures: How to Make Effective Disclosures in Digital Advertising." *See*   https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf (last visited Jan. 7, 2016).  As the title suggests, this guidance applies only to online advertising and sales.  *See id.* at 1

(describing guidance as relating to situations where "businesses advertise and sell their products and services online").  The guidance does not apply to brick-and-mortar sales like those at issue here.

Further, while Plaintiffs allege that "there is no legal requirement" that TJX post its "Compare At" signs near checkout areas, SAC ¶ 69, they tellingly cannot point to any legal requirement that TJX should have posted its policy in some *other* location.  In fact, displaying consumer-directed information at the front of a store, near the checkout area or a customer service desk, is a widespread practice that is well accepted in the retail industry as sufficient to provide notice to reasonable consumers.  For instance, with regard to refund policies, New York law offers retail merchants the option of posting such policies on a sign "so situated as to be clearly visible to the buyer from the cash register" (or alternatively, on signs posted at each store entrance, on signs affixed to each cash register, or on item labels).  N.Y. Gen. Bus. Law § 218-a(1).  Class action settlements involving retail defendants have frequently approved class notice plans in which the notice is posted at the front of a store, *see, e.g.*, *Yeoman v. IKEA U.S. West, Inc.*, No. 11-cv-701, 2013 WL 5944245, at *3-4 (S.D. Cal. Nov. 5, 2013); *Todd v. Retail Concepts, Inc.*, No. 3:07-0788, 2008 WL 3981593, at *2 (M.D. Tenn. Aug. 22, 2008), and posting a policy at the front of a store has likewise been approved as part of class action and bankruptcy remedies, *see, e.g.*, *Lamb v. Bitech, Inc.*, No. 3:11-cv-05583, 2013 WL 4013166, at *3 (N.D. Cal. Aug. 5, 2013); *In re Borders Grp. Inc.*, No. 11-10614, 2011 Bankr. LEXIS 2948, at *160 (Bankr. S.D.N.Y. July 21, 2011).  In short, Plaintiffs plead no facts to suggest that posting a sign at the front of each store is insufficient to provide notice of the "Compare At" definition to a reasonable consumer acting reasonably under the circumstances.

## V. PLAINTIFFS' COMMON LAW CLAIM SHOULD BE DISMISSED UNDER RULE 12(B)(6) AND RULE 9(B)

To state a common law misrepresentation claim, Plaintiffs must plead fraud with particularity under Federal Rule of Civil Procedure 9(b).  *See Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 119 (E.D.N.Y. 2011).  As detailed above, Plaintiffs have not pled facts regarding injury or falsity sufficient to satisfy even Rule 8(a)'s plausibility standard, let alone Rule 9(b)'s more demanding particularity standard.  For this reason alone, Plaintiffs' common law claim should be dismissed.

Additionally, a misrepresentation claim requires Plaintiffs to plead, among other things, justifiable reliance on a statement by TJX.  *See Gomez-Jimenez*, 103 A.D.3d at 18.  Plaintiffs fail to adequately allege facts supporting this element, for at least two separate reasons.  First, Plaintiffs could not have reasonably relied to their detriment on a statement that would not have misled a reasonable consumer.  *See, e.g.*, *Marcus v. AT&T Corp.*, 138 F.3d 46, 63-64 (2d Cir. 1998) (plaintiff could not have reasonably relied on statement that contradicted defendant's filed tariff, where reasonable consumers are presumed to know such information).  Second, Plaintiffs do not allege any of the "Compare At" prices they claim to have seen, which are the allegedly false statements on which they purportedly relied.  Without alleging the actual false statements, Plaintiffs cannot support any reasonable inference that they justifiably relied on those statements.

## VI. CONCLUSION

For the foregoing reasons, TJX respectfully requests that the Court grant its motion to dismiss in its entirety, and dismiss the SAC with prejudice, as further amendment would be futile.

Dated: Boston, Massachusetts
     February 1, 2016               ROPES & GRAY LLP


                              /s/ John P. Bueker
                             John P. Bueker (*pro hac vice*)
                             Rebecca C. Ellis (*pro hac vice*)
                             ROPES & GRAY LLP
                             800 Boylston Street
                             Boston, Massachusetts 02199-3600
                             E: john.bueker@ropesgray.com
                             E: rebecca.ellis@ropesgray.com
                             T: (617) 951-7000
                             F: (617) 951-7050


                             Christopher Conniff
                             1211 Avenue of the Americas
                             New York, New York 10036
                             E: christopher.conniff@ropesgray.com
                             T: (212) 596-9000
                             F: (212) 596-9090


                             *Attorneys for The TJX Companies, Inc.*


## CERTIFICATE OF SERVICE

      I hereby certify that on this 1st day of February, 2016, I have caused a true and accurate copy of this Memorandum in Support of Defendant's Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint to be served upon all counsel of record via the CM/ECF system.


                              /s/ John P. Bueker
                             John P. Bueker