UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                                     :

SVETLANA BRAYNINA and INGA     :
GUREVICH, *individually and on behalf of* :
*all others similarly situated,*           :
                                     :
                      Plaintiffs,   :
                                     :
                   v.               :
                                     :
TJX COMPANIES, INC.,           :
                                     :
                     Defendant.  :
                                     :
------------------------------------------------------X

| |
|---|
| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED:  September 26, 2016 |

15 Civ. 5897 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

      Plaintiffs Svetlana Braynina and Inga Gurevich bring this class action individually and on behalf of all others similarly situated, alleging that Defendant TJX Companies, Inc. violated §§ 349 and 350 of the New York General Business Law by engaging in deceptive pricing practices.  Defendant has moved to dismiss Plaintiffs' Second Amended Complaint (the "SAC"), claiming that it fails to state a claim upon which relief can be granted. Because, as outlined herein, Plaintiffs fail to plead a legally cognizable injury, the Court dismisses Counts I and II of the SAC.  Further, in light of Plaintiffs' abandonment of their intentional misrepresentation claim, the Court also dismisses Count III of the SAC.

## BACKGROUND[1]

### A.    Factual Background

### 1.    Defendant's Retail Practices

Defendant TJX Companies, Inc. ("Defendant") operates several discount department store chains throughout New York, including T.J. Maxx, HomeGoods, and Marshalls (the "Retailers").  (SAC ¶¶ 32-35).  Defendant promotes the Retailers as "deep discounters" that sell merchandise at prices that are generally 20% to 60% below department and specialty store regular prices on comparable items.  (*Id.* at ¶¶ 2, 38-43).  Merchandise is sourced from a large number of vendors and turns over rapidly in Retailer inventories.  (*Id.* at ¶¶ 45, 48-49).  This high volume of turnover is designed "'to create a treasure hunt experience in [the Retailers'] stores and to spur frequent customer visits.'" (*Id.* at ¶ 47 (quoting The TJX Companies, Inc. 2015 Form 10-K at 5)).

Merchandise price tags across the Retailers are identical in all respects material to the instant litigation.  (SAC ¶ 57).  Each tag displays two prices: (i) the price at which the Retailer is offering the item for sale (the "Selling Price"), and (ii) a higher, comparative reference price designated with the phrase "Compare At" (the "Compare At Price").  (*Id.* at ¶ 55).  That phrase is

---

[1]    This Opinion draws on factual allegations in the Second Amended Complaint ("SAC", Dkt. #24), which allegations are taken as true for purposes of this motion.  *See Faber* v. *Metro. Life Ins. Co.,* 648 F.3d 98, 104 (2d Cir. 2011) (when reviewing a complaint for failure to state a claim, the court will "assume all well-pleaded factual allegations to be true" (internal quotation marks omitted)).  For convenience, Defendant's moving brief is referred to as "Def. Br." (Dkt. #30); Plaintiffs' brief in opposition as "Pl. Opp." (Dkt. #33); and Defendant's reply as "Def. Reply" (Dkt. #34).

nowhere explained or qualified on the price tag itself or in the Retailers'
merchandise areas.  (*Id.* at ¶¶ 58-59).

Defendant instead explains the "Compare At" designation (the
"Disclosure") in two places.  (SAC ¶ 70).  Within stores, the Disclosure is posted
on a sign located in an area behind the check-out registers that would not be
obvious or accessible to most consumers (*id.* at ¶¶ 68-69); online, it is
displayed on a webpage that is hyperlinked in fine print at the bottom of the
Retailers' websites (*id.* at ¶ 63).  The in-store and online Disclosures are
identical (*id.* at ¶ 67), and provide:

> What do we mean by "compare at?"
>
> The "compare at" price is our buying staff's estimate of
> the regular, retail price at which a comparable item in
> finer catalogs, specialty or department stores may have
> been sold.  We buy products from thousands of vendors
> worldwide, so the item may not be offered by other
> retailers at the "compare at" price at any particular time
> or location. We encourage you to do your own
> comparison shopping as another way to see what great
> value we offer.  We stand for bringing you and your
> family exceptional value <u>every day</u> — it's the foundation
> of our business.

(*Id.* at ¶ 64 (emphasis in original)).

### 2.    Plaintiffs' Allegations of Deceptive Conduct

Plaintiffs allege that Defendant's practice of listing a Selling Price
alongside a higher Compare At Price on its Retailers' price tags (the "Compare
At Practice") is designed to give consumers the impression that they are
receiving a discount, i.e., that they are saving the difference between the two
prices.  (SAC ¶¶ 56, 61, 106).  Plaintiffs assert that they reasonably understood
Compare At Prices to be the actual prices at which other merchants were

selling the same items and, therefore, that the comparative savings reflected on Defendants' price tags were bona fide. (*Id.* at ¶¶ 60, 62, 75). In reality, it is alleged, Compare At Prices were and are merely Defendant's estimates of prices at which comparable items may have been sold by other retailers. (*Id.* at ¶ 71). Plaintiffs argue that the Compare At Practice thus deceives consumers into making purchases based on an illusion of savings. (*Id.* at ¶¶ 51, 61).

Plaintiffs further contend that Defendant's Disclosure does not cure this deception. It is inadequately displayed, such that many consumers, like Plaintiffs, are wholly unaware of it. (SAC ¶¶ 104-05). To the extent some consumers notice the Disclosure, they do not do so until after they have selected their items, waited in line to check out, and likely completed their purchase. (*Id.* at ¶ 68). Moreover, the Disclosure is substantively inadequate and, indeed, exacerbates the likelihood that a reasonable consumer would be misled by the Compare At Practice. (*Id.* at ¶¶ 75, 81, 96). Under Defendant's Disclosure it is possible that another retailer may never have offered a comparable item for sale at the Compare At Price (*id.* at ¶ 78), which, for example, is almost certainly the case for items uniquely manufactured for Defendant (*id.* at ¶¶ 83-85).

### 3.  Plaintiffs' Purchases

Plaintiff Svetlana Braynina is a resident of Brooklyn, New York. (SAC ¶ 29).[2] In or around October 2014, she traveled about 74 miles to Defendant's

---

[2]     The Court observes a disconnect between paragraph 24 of the SAC, which recites that Plaintiffs "live within this district," and paragraphs 29 and 30, which make clear that both Plaintiffs in fact reside in the Eastern District of New York. (*Compare* SAC ¶ 24,

T.J. Maxx store in Monroe, New York, and purchased hats, shirts, and other articles of clothing.  (*Id.* at ¶¶ 109-10).  In June 2015, Braynina traveled about 42 miles from her home to Defendant's HomeGoods store, also in Monroe, and purchased several unspecified items.  (*Id.* at ¶¶ 111-12).[3]  In July 2015, Braynina traveled about 23 miles to Defendant's Marshalls store in New Hyde Park, New York, and purchased towels, children's clothing, and other items. (*Id.* at ¶¶ 113-15).

Plaintiff Inga Gurevich is a resident of Staten Island, New York.  (SAC ¶ 30).  On multiple occasions, she traveled about one mile from her home to Defendant's T.J. Maxx store on Staten Island, and purchased several unspecified items; the SAC identifies the total amounts spent during each visit. (*Id.* at ¶¶ 120, 123-27, 129, 131).  Gurevich also traveled about two miles on one occasion to Defendant's HomeGoods store on Staten Island (*id.* at ¶¶ 121, 130), and about four miles on two occasions to Defendant's Marshalls store on Staten Island (*id.* at ¶¶ 122, 128, 130).

Plaintiffs allege that each item they purchased displayed a price tag with a Compare At Price that was higher than its Selling Price (SAC ¶¶ 110, 115, 131), but the SAC nowhere identifies these Compare At Prices.  And but for one

---

*with id.* at ¶¶ 29, 30).  However, Plaintiffs' proffered basis of venue is that "this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred" (*id.* at ¶ 27), and the SAC contains allegations concerning purchases at a T.J. Maxx store and a HomeGoods store in Monroe, New York, which is located in this District (*id.* at ¶¶ 109-12).  Moreover, a defendant can waive, and Defendant appears to have waived in this case, any challenge to venue.

[3]  The Court is perplexed that two stores in the same town could be 74 and 42 miles away, respectively, from Plaintiff, but reconciliation of this issue is not necessary to the Court's resolution of this motion.

visit made by Plaintiff Gurevich to Defendant's T.J. Maxx store on Staten
Island, for which a photograph of a receipt is provided that identifies individual
items' Selling Prices (*id.* at ¶ 132), the SAC does not identify the specific Selling
Prices for any of Plaintiffs' purchases.

Plaintiffs sue under New York General Business Law §§ 349 and 350,
alleging that (i) Defendant's promotion of its Retailers as "deep discounters"
and (ii) its use of the Compare At Practice constitute consumer-oriented,
materially deceptive practices and false advertising that caused Plaintiffs to
incur expenses in traveling to and patronizing Defendant's stores. (SAC ¶¶ 2-3,
116, 135, 150). Plaintiffs also sue on behalf of the following putative class:

> All individual consumers who reside in the State of New
> York who, within the Class Period, expended money
> traveling to and purchasing one or more items from a
> TJ MAXX, HOMEGOODS[,] or MARHALLS store with a
> price tag that contained a "Compare At" price and who
> have not received a refund or credit for their
> purchase(s).

(*Id.* at ¶ 154).

## B.   Procedural History

Plaintiffs filed their Complaint in this matter on July 29, 2015 (Dkt. #1),
and their First Amended Complaint on November 5, 2015 (Dkt. #12). After a
December 8, 2015 conference convened to discuss Defendant's contemplated
motion to dismiss, Plaintiffs filed a Second Amended Complaint on December
31, 2015. (Dkt. #24). On February 1, 2016, Defendant moved to dismiss
Plaintiffs' SAC pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. #29),
and filed a memorandum of law in support thereof (Dkt. #30). Plaintiffs filed

their memorandum of law in opposition on March 4, 2016 (Dkt. #33), and
Defendant its memorandum of law in reply on March 18, 2016 (Dkt. #34),
concluding briefing on the motion.

## DISCUSSION

**A.    Applicable Law**

> **1.    Motions to Dismiss Under Federal Rule of Civil**
> **Procedure 12(b)(6)**

When considering a motion to dismiss under Federal Rule of Civil
Procedure 12(b)(6), a court should "draw all reasonable inferences in [the
plaintiff's] favor, assume all well-pleaded factual allegations to be true, and
determine whether they plausibly give rise to an entitlement to relief." *Faber* v.
*Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks
omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to 'state a claim to relief that is
plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell
Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "While *Twombly* does not
require heightened fact pleading of specifics, it does require enough facts to
'nudge [a plaintiff's] claims across the line from conceivable to plausible.'" *In re
Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (per curiam) (quoting
*Twombly*, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely
consistent with' a defendant's liability, it 'stops short of the line between
possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678
(quoting *Twombly*, 550 U.S. at 557). Moreover, "the tenet that a court must
accept as true all of the allegations contained in a complaint is inapplicable to

legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)); *see generally Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 558-60 (2d Cir. 2016) (discussing documents that may properly be considered in resolving a motion to dismiss).

### 2.    New York General Business Law §§ 349 & 350

New York General Business Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state[.]"  N.Y. Gen. Bus. Law § 349(a).  The law is a broad, remedial statute designed to address "the numerous, ever-changing types of false and deceptive business practices which plague consumers in [New York] State."  *Karlin* v. *IVF Am., Inc.*, 93 N.Y.2d 282, 291 (1999); *see also Blue Cross & Blue Shield of N.J., Inc.* v. *Philip Morris USA Inc.*, 3 N.Y.3d 200, 207 (2004).

8

A cause of action under § 349 has three elements: (i) "the challenged act or practice was consumer-oriented"; (ii) "it was misleading in a material way"; and (iii) "the plaintiff suffered injury as a result of the deceptive act." *Crawford* v. *Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014) (quoting *Stutman* v. *Chemical Bank*, 95 N.Y.2d 24, 29 (2000)). The deceptive act can be either a representation or an omission. *See Oswego Laborers' Local 214 Pension Fund* v. *Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995). Claims based on omissions are appropriate "where the business alone possesses material information that is relevant to the consumer and fails to provide this information." *Id.* Moreover, deceptive conduct "need not reach the level of common-law fraud to be actionable under [§] 349." *Stutman*, 95 N.Y.2d at 29. A showing of justifiable reliance, for example, is not required. *See Koch* v. *Acker, Merrall & Condit Co.,* 18 N.Y.3d 940, 941 (2012). Accordingly, § 349 claims are not subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Pelman ex rel. Pelman* v. *McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005).

New York General Business Law § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state[.]" N.Y. Gen. Bus. Law § 350. "The standard for recovery under … § 350, while specific to false advertising, is otherwise identical to [§] 349." *Goshen* v. *Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002). For this reason, courts have found that the scope of § 350 is as broad as that of § 349, *see Karlin*, 93 N.Y.2d at 290, and that its essential elements are the

9

same, *see Orlander* v. *Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015); *Maurizio*

v. *Goldsmith*, 230 F.3d 518, 522 (2d Cir. 2000).

## B. Plaintiffs Fail to State a Claim Under General Business Law §§ 349 and 350

For purposes of this motion, Defendant does not contest that the

conduct or advertisements at issue were "consumer-oriented." (*See* Def. Br. 7

n.3).[4]  Consequently, the Court need only assess the second and third elements

of Plaintiffs' §§ 349 and 350 claims — whether the conduct or advertisements

were materially misleading and whether Plaintiffs were injured as a result.  *See*

*Orlander,* 802 F.3d at 300.[5]  As set forth in the remainder of this Opinion, the

Court finds that Plaintiffs have failed to allege a cognizable injury, requiring the

dismissal of the SAC.

### 1. Plaintiffs Adequately Allege Materially Misleading Conduct

#### a. Applicable Law

Plaintiffs allege that Defendant's promotion of its Retailers as "deep

discounters" and its use of the Compare At Practice are materially misleading

practices.  (*See* SAC ¶¶ 2-3, 116, 135, 150).  The New York Court of Appeals

has adopted an objective definition of "misleading" under §§ 349 and 350,

---

[4]     Defendant does not dispute § 349's consumer-oriented element for purposes of this motion, but perhaps inadvertently, makes no representation as to § 350's analogous element.  (*See* Def. Br. 7 n.3 ("Under Section 349, the plaintiff must also plead that the defendant is engaged in consumer-oriented conduct.  For the purposes of this motion, [Defendant] does not dispute this element." (internal citation omitted)).  The Court hereby finds that the SAC plausibly pleads that Defendant's allegedly deceptive conduct was consumer-oriented for purposes of both §§ 349 and 350.

[5]     Plaintiffs have abandoned their intentional misrepresentation claim.  (*See* Pl. Opp. 5 n.2).

whereby the act or omission must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Orlander*, 802 F.3d at 300 (citing *Oswego Laborers'*, 85 N.Y.2d at 26); *see also Gaidon* v. *Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 344 (1999). Courts have recognized that a court may determine whether an act or omission is misleading as a matter of law. *See Oswego Laborers'*, 85 N.Y.2d at 26; *see also, e.g.*, *Dimond* v. *Darden Rests., Inc.*, No. 13 Civ. 5244 (KPF), 2014 WL 3377105, at *8 (S.D.N.Y. July 9, 2014) (finding mandatory gratuity practice to be not materially misleading as a matter of law because, *inter alia*, the gratuity was "completely and conspicuously" disclosed on menu, such that patrons were "expressly informed" of dining costs). That said, such a determination "is usually a question of fact." *Quinn* v. *Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013) (citing *Sims* v. *First Consumers Nat'l Bank*, 758 N.Y.S.2d 284, 286 (1st Dep't 2003)); *see also Goldemberg* v. *Johnson & Johnson Consumer Cos.,* 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014) ("Although 'the presence of a disclaimer or other clarifying language *may* defeat a claim of deception,' the Court cannot hold as a matter of law that the product labels are not misleading to a reasonable consumer." (quoting *Fink* v. *Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) (emphasis in *Goldemberg*)).

A "material" deception is one involving information that is important to consumers and likely to affect their choice of product. *See Lebowitz* v. *Dow Jones & Co.*, 847 F. Supp. 2d 599, 605 (S.D.N.Y. 2012); *Bildstein* v. *MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004). An omission is materially

misleading, for example, where the plaintiff would have acted differently had the defendant disclosed the information in its possession.  *Compare Chiste* v. *Hotels.com L.P.*, 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010) (finding that an internet hotel-booking company's failure to disclose that the "tax" it collected was more than the hotel would have charged was a materially deceptive act because plaintiff plausibly alleged that she would not have used the company to make reservations and pay the inflated "tax" had she known about the inflation), *with Tasini* v. *AOL, Inc.*, 851 F. Supp. 2d 734, 745 (S.D.N.Y. 2012) (finding internet news companies' representations concerning their possession of page-view data, even if misleading, were not material because such data was "plainly irrelevant" to the unpaid bloggers' decisions to continue providing content).

### b.     Plaintiffs Have Pled Sufficient Facts to Support a Claim of Material Deception

Defendant argues that Plaintiffs have failed to allege sufficient facts to plead a materially misleading act or omission.  (*See* Def. Br. 13-15; Def. Reply 7-8).  The Court agrees with Defendant's argument insofar as it relates to Plaintiffs' allegations concerning Defendant's general promotion of its Retailers as "deep discounters."  Insofar as such allegations are intended to plead a materially deceptive act independent of the Compare At Practice, the Court finds the SAC's factual allegations insufficient to support the conclusory claim that Defendant's "deep discounter" advertising was materially deceptive.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570; *Arista Records, LLC* v. *Doe 3*, 604 F.3d 110, 119-20 (2d Cir. 2010).

12

Plaintiffs' allegations concerning Defendant's Compare At Practice present a closer question, however.  Defendant faults Plaintiffs for identifying neither the Compare At and Selling Prices for items they purchased nor "*what they should have paid*, or what the 'Compare At' prices *should have been*" for those products.  (Def. Br. 2 (emphases in original); *see also id.* at 13).  Although a better-pled complaint would have included some of these facts, the Court does not find their absence fatal to Plaintiffs' claim that the Compare At Practice constitutes a deceptive practice.

As Defendant acknowledges, deceptive practice claims under §§ 349 and 350 — unlike analogous claims under California law, for example — are not subject to the heightened pleading requirements of Rule 9(b).  *Compare Pelman*, 396 F.3d at 511 (recognizing that § 349 actions are not subject to Rule 9(b)'s heightened pleading requirements), *with Chester* v. *TJX Companies, Inc.*, No. 15-cv-01437-ODW, 2016 WL 4414768, at *12 (C.D. Cal. Aug. 18, 2016) (applying Rule 9(b)'s heightened pleading standard to deceptive pricing claim under California law), *and Branca* v. *Nordstrom, Inc.*, No. 14CV2062-MMA, 2015 WL 1841231, at *3, *6 (S.D. Cal. Mar. 20, 2015) (same).  Moreover, what an item's Compare At Price *should have been* is information more readily known by Defendant than by consumers, such as Plaintiffs.  *Cf. Oswego Laborers'*, 85 N.Y.2d at 26 (observing that claims based on omissions are appropriate "where the business alone possesses material information that is relevant to the consumer and fails to provide this information").  Moreover, the nature of the alleged deceptive practice here does not turn on the precise

difference in dollar amount between a given Compare At Price and Selling Price, nor the amount that Plaintiffs "should have paid." (*See* Def. Br. 2). After all, Plaintiffs explicitly disclaim an "overpayment" theory of injury (*see* Pl. Opp. 19 ("To be clear, Plaintiffs are not alleging that the items they purchased from Defendants were overpriced or that Plaintiffs overpaid.")), and the law does not require them to demonstrate reliance on the deceptive practice, *see Stutman*, 95 N.Y.2d at 29 (stressing that § 349 contains no requirement that an injured party show reasonable reliance on a deceptive practice in order to obtain relief).

There is little dispute over the contours of the materially misleading conduct alleged. Plaintiffs claim that Compare At Prices were higher than Selling Prices for items they purchased and that, according to Defendant's own Disclosure, the Compare At Prices represent only *estimates* of prices at which comparable items *may have* been sold, not actual (or estimated) prices at which comparable items were *actually* sold. Plaintiffs have adequately delineated Defendant's Compare At Practice and have explained how it is likely to mislead a reasonable consumer. Between the content and placement of Defendant's Disclosure and Plaintiffs' other factual allegations, the SAC contains sufficient factual matter that, if accepted as true, could support plausible claims of materially misleading conduct under §§ 349 and 350.

### c.    Reasonable Consumers Could Have Been Materially Misled by Defendant's Compare At Practice

Sections 349 and 350 comprise a "mini" Federal Trade Commission ("FTC") Act, having been modeled on that analogous federal statute. *See People ex rel. Spitzer* v. *Applied Card Sys., Inc.*, 11 N.Y.3d 105, 120 (2008) (citing

*Oswego Laborers'*, 85 N.Y.2d at 26; *Goshen*, 98 N.Y.2d at 323-24); W*ells Fargo Bank Nw., N.A.* v. *Taca Int'l Airlines, S.A.*, 247 F. Supp. 2d 352, 371 n.21 (S.D.N.Y. 2002).  Indeed, § 349 was enacted "to follow in the steps of the [FTC] with respect to the interpretation of deceptive acts and practices outlawed in Section 5 of the [FTC] Act."  *State by Lefkowitz* v. *Colo. State Christian Coll. of Church of Inner Power, Inc.,* 346 N.Y.S.2d 482, 487 (N.Y. Sup. Ct. 1973); *see also* N.Y. Gen. Bus. Law § 349(d) (exempting, from state enforcement, practices that comply with, *inter alia*, FTC rules, regulations, and interpretations).  The same is true for § 350's false advertising prohibition.  *See Metro. N.Y. Retail Merchs. Ass'n* v. *City of N.Y.,* 303 N.Y.S.2d 612, 614 (N.Y. Sup. Ct. 1969) ("State legislature intended to adopt requirements [under § 350] identical to those established by the [FTC].").

Accordingly, "in interpreting the phrase 'deceptive practices' [under § 349], the New York courts have in large measure relied on the [FTC] Act's definition of such practices."  *Genesco Entm't* v. *Koch*, 593 F. Supp. 743, 752 (S.D.N.Y. 1984); *Sports Traveler, Inc.* v. *Advance Magazine Publishers, Inc.*, No. 96 Civ. 5150 (JFK), 1997 WL 137443, at *2 (S.D.N.Y. Mar. 24, 1997) ("Because [§] 349 is modelled after the [FTC] Act, federal courts have interpreted [§ 349's] scope as limited to the types of offenses to the public interest that would trigger [FTC] intervention under [the FTC Act] [.]").

Here, the Court has surveyed the relevant FTC guidelines for the limited purpose of informing its "reasonable consumer" analysis of Defendant's Compare At Practice.  *See Oswego Laborers'*, 85 N.Y.2d at 26 (recognizing that

§ 349's reasonable consumer test for deceptive practices complements FTC Act analogue); *State by Lefkowitz*, 346 N.Y.S.2d at 488 (endorsing use of FTC guidelines to interpret § 349); *Bildstein*, 329 F. Supp. 2d at 414 (evaluating § 349's materiality element by examining FTC Act § 5 case law); *see also Rubenstein* v. *Neiman Marcus Grp. LLC,* No. CV 14-07155 SJO, 2015 WL 1841254, at *5 (C.D. Cal. Mar. 2, 2015) (relying on FTC guides as "a useful guide to how a reasonable consumer might interpret a price tag"); *Branca*, 2015 WL 1841231, at *8 (same).

The FTC's Guides Against Deceptive Pricing (the "FTC Guides") establish standards for comparative price advertising.  *See* 16 C.F.R. § 233; *see also id.* § 1.5 (describing purpose of FTC's industry guides).  Defendant argues that its Compare At Practice comports with FTC standards and, as a matter of law, is unlikely to mislead a reasonable consumer.  (*See* Def. Br. 18-22).  The Court cannot make either finding at this stage in the litigation.

The FTC Guides examine several forms of "bargain advertising," three of which are potentially implicated here.  Section 233.1 evaluates Former Price Comparisons, defined as advertising that "offer[s] a reduction from the advertiser's own former price for an article."  16 C.F.R. § 233.1(a).  Section 233.2 addresses Retail Price Comparisons, defined as advertising that "offer[s] goods at prices lower than those being charged by others for the same merchandise in the advertiser's trade area."  *Id.* § 233.2(a).  Section 233.2 also addresses Comparable Value Comparisons, a closely related form of advertising that "offer[s] a reduction from the prices being charged either by the advertiser

16

or by others in the advertiser's trade area for other merchandise of like grade and quality — in other words, comparable or competing merchandise — to that being advertised." *Id.* § 233.2(c).

As a threshold matter, it is not clear, evaluating Defendant's price tags in isolation, whether the Compare At Practice reflects a Former Price Comparison, a Retail Price Comparison, or a Comparable Value Comparison. The phrase "Compare At" may be interpreted to refer to the former price of the same item, another retailer's price for the same item, or the price of a different but comparable item. Here, for example, Plaintiffs construed the Compare At Practice to reflect a Retail Price Comparison. (*See* SAC ¶ 75 ("[R]easonable consumers, including Plaintiffs, believe the "Compare At" reference price on Defendant's price tags to be the price at which other merchants sell the same product.")). To be sure, Defendant's Disclosure confirms that the Compare At Practice is (or, at least, is closest to) a Comparable Value Comparison that purports to reflect savings based on the retail price at which comparable items are sold by others. (*See id.* at ¶ 61). *See Branca*, 2015 WL 1841231, at *8 (interpreting price tag with "Compared To" language as displaying a Comparable Value Comparison); *Rubenstein*, 2015 WL 1841254, at *6 (same). But a consumer confronted with only the "Compare At" designation on a price tag, without seeing the allegedly inconspicuous Disclosure, would not be unreasonable as a matter of law in interpreting the Compare At Price to be either of the other two price comparisons identified above.

The FTC Guide for Comparable Value Comparisons provides:

17

> A closely related form of bargain advertising [to Retail Price Comparisons] is to offer a reduction from the prices being charged either by the advertiser or by others in the advertiser's trade area for other merchandise of like grade and quality — in other words, comparable or competing merchandise — to that being advertised.  Such advertising can serve a useful and legitimate purpose when it is made clear to the consumer that a comparison is being made with other merchandise and the other merchandise is, in fact, of essentially similar quality and obtainable in the area. The advertiser should, however, be reasonably certain, just as in the case of comparisons involving the same merchandise, that the price advertised as being the price of comparable merchandise does not exceed the price at which such merchandise is being offered by representative retail outlets in the area.  For example, retailer Doe advertises Brand X pen as having "Comparable Value $15.00".   Unless a reasonable number of the principal outlets in the area are offering Brand Y, an essentially similar pen, for that price, this advertisement would be deceptive.

16 C.F.R. § 233.2(c).  According to Defendant's Disclosure, the Compare At Price is an "estimate of the regular, retail price at which a comparable item in finer catalogs, specialty or department stores may have been sold."  (SAC ¶ 64).  Indeed, "the item may not be offered by other retailers at the 'compare at' price at any particular time or location."  (*Id*.).

As presented in the SAC, Defendant's Compare At Practice is inconsistent in several respects with the FTC Guide for Comparable Value Comparisons.  First, Defendant's Compare At Practice fails to "ma[k]e clear to the consumer that a comparison is being made with other merchandise and the other merchandise is, in fact, of essentially similar quality and obtainable in the area."  16 C.F.R. § 233.2(c).  As noted, the Retailer price tag viewed in isolation does not indicate that a comparison is being made to comparable

merchandise, as opposed to the former price or another retailer's price for the same merchandise; nor is there any indication on the tag that the phrase is qualified or explained elsewhere.  (*See* SAC ¶ 58).  But even assuming the Disclosure were adequately displayed,[6] the Compare At Practice might still be materially deceptive because the Disclosure fails to "ma[k]e clear to the consumer" that the comparable item "is, in fact … *obtainable in the [advertiser's trade] area.*"  *Id.* § 233.2(c) (emphasis added); *see also id.* § 233.2(a)-(b) (indicating that "advertiser's trade area" refers to geographic area).  (*See also* SAC ¶¶ 50, 53 (alleging that, given the volume and diversity of items sourced from a large number of vendors, Defendant does not verify that each product is available in the geographic area and for a price at or above the listed Compare At Price)).

Next, the Compare At Practice does not necessarily reflect "a reduction from the prices being charged either by the advertiser or by others in the advertiser's trade area," 16 C.F.R. § 233.2(c), since the Compare At Price pegs itself to prices at which comparable items "*may* have been sold" (SAC ¶ 64 (emphasis added)); in fact, the Disclosure confirms that such items "may not be offered by other retailers at the 'compare at' price at any particular time or

---

[6]     In this regard, the Court believes that Defendant takes undue comfort in its prior decision in *Dimond* v. *Darden Rests., Inc.*, No. 13 Civ. 5244 (KPF), 2014 WL 3377105 (S.D.N.Y. July 9, 2014).  (*See* Def. Br. 18-19, 22).  Among other differences, the Court observed in that case that "the terms and conditions were completely and conspicuously indicated on the menu so that each patron was expressly informed as to the cost of dining at the Restaurants prior to voluntarily placing his or her order."  *Id.* at *8.

location" (*id.*). A consumer would thus not be unreasonable in misconstruing the Compare At Price to reflect a true Comparable Value Comparison.

Moreover, the representations in the Disclosure undermine the notion that Defendant is "reasonably certain … that the price advertised as being the price of comparable merchandise does not exceed the price at which such merchandise is being offered by representative retail outlets in the area." 16 C.F.R. § 233.2(c).[7] The SAC alleges, in conjunction with Defendant's Disclosure, that the sheer volume and diversity of items in Defendant's weekly deliveries render it unlikely that Defendant verifies that each of its products is available in the geographic area and at or near the Compare At Price. (*See* SAC ¶ 53). Estimates based on a collection of actual, comparable prices are one thing; they are approximations rooted in reality and could be subject to the "appreciably exceed" standard discussed, *see supra*, at note 7. Estimates based on comparable prices that *may or may not* exist, on the other hand, are

7 Defendant argues in favor of grafting the Retail Value Comparison Guide's "appreciably exceed" standard, *see* 16 C.F.R. § 233.2(a), onto the Comparable Value Comparison Guide. (*See* Def. Br. 20). Section 233.2(c) provides that an advertiser should be "reasonably certain, just as in the case of comparisons involving the same merchandise, that the price advertised as being the price of comparable merchandise does not exceed the price at which such merchandise is being offered" elsewhere. 16 C.F.R. § 233.2(c). Contrary to Defendant's argument, it is not clear that § 233.2(c)'s "just as in the case of comparisons involving the same merchandise" cross-references the nature of the advertiser's reasonable certainty or the nature of the comparison price. The Comparable Value Comparison Guide expressly states that an advertiser should be reasonably certain that the comparison price "does not exceed" the price offered by others, while the Retail Value Comparison Guide expressly states that it "does not *appreciably* exceed" it. *Compare id.* § 233.2(c), *with id.* § 233.2(a) (emphasis added). The omission of the modifier in § 233.2(c) would seem to indicate a deliberate recalibration of the standard and, therefore, that the cross-reference incorporates the nature of the reasonable certainty, not the nature of the comparison price. In any case, the potential difference is immaterial for present purposes because Defendant's Compare At Practice is inconsistent with both standards.

mere guesses and are hardly indicative of reasonable certainty.  *See Chester*,
2016 WL 4414768, at \*10 ("If Defendants believe that 'estimates' are the same
as 'comparisons with actual merchandise,' then the Court is here to say that
this word does not mean what you think it means.  In fact, the FTC guidelines
clearly outline that reference prices meant to reflect comparable values must be
actual 'prices being charged' by other, similar retailers in the geographical
region at that point in time, and not 'estimates' of what a fictitious retailer *may*
charge." (emphasis in original) (citing 16 C.F.R. § 233.2(c))).

As a fall-back position, Defendant argues that the FTC Guides permit a
national retailer like Defendant to use comparison prices that reflect an
"honest estimate" of market prices.  (*See* Def. Br. 21).  But the Guide's
authorization of certain "honest estimates," 16 C.F.R. § 233.3(g), applies to
"[a]dvertising retail prices which have been established or suggested by
manufacturers or other non-retail distributors," *id.* § 233.3, not to the retailer
Comparable Value Comparisons reflected in Defendant's Compare At Practice.

In short, this Court cannot conclude as a matter of law that Defendant's
Compare At Practice is not "likely to mislead a reasonable consumer acting
reasonably under the circumstances."  *Orlander*, 802 F.3d at 300 (citing
*Oswego Laborers'*, 85 N.Y.2d at 26); *see Chester*, 2016 WL 4414768, at \*11
("Plaintiffs have sufficiently alleged that the price tag *could* mislead a
reasonable consumer, and that a reasonable consumer does not believe that
'Compare At' refers to an *estimated value* instead of an actual item in a
competitor's store." (emphases in original)).

21

### 2.    Plaintiffs Do Not Adequately Allege Injury

There remains the question of injury, and it is here that Plaintiffs' claims founder.  The SAC pleads two principal theories of injury:  First, Defendant's deceptive conduct caused Plaintiffs to overpay for their purchases (*see, e.g.*, SAC ¶ 17 ("Plaintiff and the members of the Class paid more than what an actual 'Compare At' price would have been at another retailer"); *id.* at ¶ 21 (alleging that Plaintiffs and the Class "would not have paid as much for the products as they did pay" but for deception); *id.* at ¶ 145 ("[H]ad Plaintiffs been aware of [the deceptive acts], they would not have paid as much for the items as they did pay."); *id.* at ¶ 152 ("[A]mounts paid by Plaintiffs and the members of the Class were likely higher than a true, *bona fide* 'Compare At' would have been.")); and, second, Defendant's deceptive conduct caused Plaintiffs to incur expenses in traveling to and patronizing Defendant's Retailers (*see, e.g.*, *id.* at ¶ 21 (alleging that Plaintiffs and the Class "would not have incurred the expenses associated with traveling to Defendant's stores" but for deception); *id.* at ¶ 144 (alleging that Plaintiffs "would not have incurred the costs associated with traveling to Defendant's stores" but for deception); *id.* at ¶ 151 ("Plaintiffs suffered actual damages in the form of the costs incurred by traveling to and making purchases at Defendant's stores.")).

In their opposition brief, Plaintiffs disavow their "overpayment" theory of injury.  (*See* Pl. Opp. 19 ("To be clear, Plaintiffs are not alleging that the items they purchased from Defendants were overpriced or that Plaintiffs overpaid.")).  Accordingly, the Court deems that theory abandoned, *cf. Jackson* v. *Fed. Exp.*,

766 F.3d 189, 196 (2d Cir. 2014) ("Pleadings often are designed to include all possible claims or defenses, and parties are always free to abandon some of them."), and considers only Plaintiffs' "travel expenses" theory of injury.  For the reasons set forth in the remainder of this section, the Court finds that this theory cannot suffice under either § 349 or § 350.

### a.   Applicable Law

Under the injury element common to §§ 349 and 350, Plaintiffs must show that they "suffered injury as a result of" Defendant's materially misleading conduct.  *Crawford*, 758 F.3d at 490; *Stutman*, 95 N.Y.2d at 29 ("The plaintiff … must show that the defendant's 'material deceptive act' caused the injury.").  The resulting injury must be "actual, although not necessarily pecuniary, harm."  *Oswego Laborers'*, 85 N.Y.2d at 26.  Moreover, the deceptive conduct cannot be pled "as both act and injury."  *Small* v. *Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999).

Both parties focus on *Small* in their briefing, and so a word about the case is in order.  In *Small*, the plaintiffs alleged that the defendants had used deceptive commercial practices to sell cigarettes, and that these practices "prevented [the plaintiffs'] from making free and informed choices as consumers."  94 N.Y.2d at 56.  The plaintiffs did not argue that the deceptive practices caused them to overpay for cigarettes, nor did they "seek recovery for injury to their health as a result of their ensuing addiction."  *Id.*  Instead, the plaintiffs alleged only that they would not have purchased the cigarettes but for those deceptive practices.  *Id.*  The Court of Appeals rejected the plaintiffs'

"deception as injury" theory, requiring instead a showing of pecuniary or actual harm apart from the deceptive conduct. *Id.*; *see, e.g.*, *Baron* v. *Pfizer, Inc.*, 840 N.Y.S.2d 445, 448 (3d Dep't 2007) (holding that plaintiff failed to plead a cognizable injury where she alleged that "she would not have purchased the drug absent defendant's deceptive practices.").

Other courts presented with analogous allegations of deceptive comparisons have rejected the induced-purchase theory of injury that *Small* forecloses under New York law. *See, e.g.*, *Shaulis* v. *Nordstrom Inc.*, 120 F. Supp. 3d 40, 51-52 (D. Mass. 2015) (finding no legally cognizable injury where plaintiff alleged that "she would not have purchased the sweater in the absence of" the defendant's deceptive use of a fabricated "Compare At" price on price tags); *Mulder* v. *Kohl's Dep't Stores, Inc.*, No. 15-11377-FDS, 2016 WL 393215, at *1, *6 (D. Mass. Feb. 1, 2016) (finding no legally cognizable injury where plaintiff alleged that "she was unfairly induced into a making a purchase that she would not have made but for" defendant's fictional comparison prices on price tags); *but see Hinojos* v. *Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013) ("[W]e hold that when a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation, he has standing to sue under [California's Unfair Competition Law and Fair Advertising Law] because he has suffered an economic injury."); *see also Chester*, 2016 WL 4414768, at *6, *11 (applying *Hinojos* and permitting a deceptively induced purchase theory of

injury for California law claims against the instant Defendant for the same Compare At Practice).

In the wake of *Small*, an actual injury claim under §§ 349 and 350 typically requires a plaintiff to "allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Orlander*, 802 F.3d at 302. This may be in the form of an overpayment or "price premium," whereby a plaintiff pays more than she would have but for the deceptive practice. *See, e.g.*, *Koenig* v. *Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288-89 (S.D.N.Y. 2014) (finding adequately pled § 349 injury where plaintiff alleged that he would not have paid the price charged for "fat-free" milk had he known it contained fat); *Lazaroff* v. *Paraco Gas Corp.*, 967 N.Y.S.2d 867, 2011 WL 9962089, at *6 (N.Y. Sup. Ct. Feb. 25, 2011) (recognizing adequately pled § 349 injury where plaintiff alleged that he would not have paid the price charged for a "20 pound" propane cylinder had he known it contained 15 pounds of propane). The injury may also be in the form of a deprivation of contracted-for services, *see, e.g.*, *Orlander*, 802 F.3d at 302 (adequately pled § 349 injury where plaintiff purchased a warranty plan but did not receive the services that defendant misleadingly told plaintiff he was purchasing), or other actual harm, *see, e.g.*, *Baron*, 840 N.Y.S.2d at 448 (offering example of § 349 injury claim based on adverse health effects).

### b. Plaintiffs Fail to Allege a Legally Cognizable Injury Under §§ 349 and 350

Plaintiffs do not allege that they were injured because they "did not receive the full value of [their] purchase," *Orlander*, 802 F.3d at 302, but

instead argue that they would not have incurred expenses traveling to and patronizing Defendant's Retailers but for Defendant's deceptive "deep discounter" advertising and deceptive Compare At Practice.  (*See* SAC ¶ 150). In support of this theory, Plaintiffs rely principally on two decisions from this District.  (*See* Pl. Opp. 18 (citing *Bildstein* v. *MasterCard Int'l, Inc.*, No. 03 Civ. 9826I (WHP), 2005 WL 1324972, at *1 (S.D.N.Y. June 6, 2005)); *id.* at 20 n.12 (citing *Ebin* v. *Kangadis Food Inc.*, No. 13 Civ. 2311 (JSR), 2013 WL 6504547, at *4 (S.D.N.Y. Dec. 11, 2013))).  In point of fact, neither case aids their cause, because both involve "overpayment" injuries, the very theory Plaintiffs here abandon.  (*See* Pl. Opp. 19).

In *Bildstein*, the plaintiff alleged that MasterCard concealed foreign currency transaction fees by surreptitiously incorporating them into the claimed currency exchange rate and, thereby, disguising the fees on customers' billings statements.  *See* 2005 WL 1324972, at *1.  The *Bildstein* plaintiff was injured because the deceptive practice caused him, *inter alia*, to overpay for the currency exchange.  *Id.* at *4; *see also Relativity Travel, Ltd.* v. *JP Morgan Chase Bank*, 831 N.Y.S.2d 349, 2006 WL 2918081, at *3 (N.Y. Sup. Ct. Feb. 14, 2006) (holding that hidden fee in foreign currency exchange constituted actual injury under § 349).  Likewise, in *Ebin*, the plaintiffs alleged that the defendant sold containers of "100% Pure Olive Oil" that actually contained pomace, not olive oil.  *See* 2013 WL 6504547, at *4.  As a result of the defendant's deceptive labeling and conduct, the plaintiffs overpaid for the product that they received.  *Id.*

Plaintiffs identify no authority, and this Court is aware of none, ratifying a "travel expenses" theory of injury under § 349 or § 350 where the underlying claim is deceptive pricing conduct.  This is unsurprising, given that such a theory, if recognized, would all but swallow up *Small*'s rule against "deception as injury" claims.  *See* 94 N.Y.2d at 56.  Any repeat customer whose claim is foreclosed by *Small* could easily circumvent that decision by latching onto the travel or other (often inevitable) collateral expenses that led to their purchase.  Smartphone users who make deceptively induced purchases on a preferred retailer's website could likewise claim data usage costs involved in the transaction.[8]  Indeed, actual purchases would no longer be necessary under Plaintiffs' proposed theory (even if it would be under their class definition (*see* SAC ¶ 154)), because the travel expense injury would be completed, not upon a plaintiff's purchase of a good, but upon his or her mere visit to a store or website.  The Court declines to adopt so broad a theory.

Plaintiffs' "travel expenses" injury claim also fails because the SAC does not adequately plead that Defendant's deceptive practices actually caused Plaintiffs' travel expenses.  *See Stutman*, 95 N.Y.2d at 29 ("The plaintiff ... must show that the defendant's 'material deceptive act' caused the injury.").  As discussed above, the SAC's allegations concerning Defendant's "deep

---

[8]     The Court's use of the phrases "repeat customer" and "preferred retailer" in the above hypotheticals is intentional.  As discussed in the body of this Opinion, there is no causal connection here between Defendant's Compare At Practice and the "travel expenses" injury because Plaintiffs would not have seen Defendant's price tags until after they traveled to a given Retailer's store.  The hypotheticals envision scenarios where a plaintiff relies on a "travel expenses" theory to circumvent *Small*'s rule against "deception as injury" claims simply by alleging, upon any repeat purchase, that it was the deceptive conduct that drew them back to the store or website.

discounter" advertising practices are insufficient as a matter of law to support a plausible claim of material deception and, therefore, of resulting injury. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570; *Arista Records*, 604 F.3d at 120. As to the Compare At Practice, Plaintiffs would not have seen the Compare At Prices on Defendant's price tags until after they traveled to a given Retailer's store. *See Mulder*, 2016 WL 393215, at *9 (rejecting "travel expenses" theory of injury because defendant's price tag misrepresentations did not cause plaintiff's travel expenses). To the extent that Plaintiffs made multiple trips to a store, the SAC contains insufficient factual matter (or, for that matter, non-conclusory allegations) to demonstrate that it was the Compare At Prices in particular that caused Plaintiffs to travel to and patronize the store. In fact, Plaintiffs make much of the power of Defendant's rapid inventory-turnover model — which is not alleged to be deceptive — to induce repeat visits. (*See* SAC ¶¶ 45-49 (detailing how Defendant's high volume of inventory turnover encourages multiple trips to its stores)). Thus, even if Plaintiffs' "travel expenses" theory of injury were legally cognizable as a general matter, which it is not, the SAC would still fail to plead adequately "that the defendant's 'material deceptive act' caused the injury." *Stutman*, 95 N.Y.2d at 29.

28

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is hereby GRANTED.[9]  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:     September 26, 2016
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

---

[9]     Because (i) Plaintiffs have not sought leave to amend, (ii) Plaintiffs have amended their Complaint twice previously, and (iii) the Court believes that any amendment would be futile, the Court's dismissal of Plaintiffs' claims is with prejudice.  *See Burch* v. *Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (observing that "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party" (internal citation omitted)).